Leo **HAWKINS,** Antone M. **Rezendes,** Benjamin J. **Verdi,** Union **Trustees of** Shopmen's Iron Workers **Health and** Welfare **Trust Fund, Plaintiffs-Appellants,**

v.

Russell **BENNETT,** Paul Hillseth, **Winford** M. **Rawlins, Employer Trustees of Shopmen's Iron Workers Health & Welfare Trust Fund, Defendants-Appellees.**

No. 82–5124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1982.

Decided April 28, 1983.

Richard D. Sommers, Schwartz, Steinsapir, Dohrmann, Krepack, Sommers & Edelstein, Los Angeles, Cal., for plaintiffs-appellants.

Raymond W. Thomas, Nelson & Rexon, Los Angeles, Cal., for defendants-appellees.

Before TANG and POOLE, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

On June 5, 1972, a trust agreement was entered into between the Steel Fabricators Association of Southern California and the International Association of Bridge Structural and Ornamental Iron Workers, Local 509, pursuant to § 302(c)(5)(B) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186(c)(5)(B) (1947). The agreement establishes a fund to be used for health and welfare benefits for the union members. The trust fund is administered by a six-member Board of Trustees, three designated on behalf of the union, and three designated on behalf of the employer. The agreement provides that any matter coming before the Board of Trustees must be passed by a majority of the trustees.

At the Board of Trustees meeting on September 17, 1981, both the union trustees and the employer trustees submitted resolutions to increase employee life and accidental death and dismemberment coverage. The three union trustees voted for their proposal and against the employer's proposal. Likewise, the three employer trustees voted for their proposal. There was no majority for either proposal. Co-counsel for the fund were instructed to initiate the appropriate arbitration procedures to resolve the deadlock.

---

* Honorable Bruce R. Thompson, Senior United States District Judge, District of Nevada, sitting by designation.

The trust agreement provides for the appointment of a neutral person to act as an arbitrator to resolve disputes, to the extent that the dispute results in an "impossibility on the part of the trustee to act upon the administration of the fund involved." Pursuant to this section, the union trustees sought to appoint an arbitrator. The employer trustees, however, refused to agree. The union trustees filed a petition in the district court seeking appointment of an impartial arbitrator to resolve the dispute. The jurisdiction of the district court rested on 29 U.S.C. § 186.

The district court denied the union's petition for appointment of an arbitrator, and the union has appealed. We have jurisdiction under 28 U.S.C. § 1291.

The employer trustees contend that under Fed.R.Civ.P. 52(a) the district court's finding that the deadlocks "have not made administration of the Trust Fund impossible nor have they affected any significant aspect of the operation of the Trust Fund," and hence its denial of the petition, may only be set aside if clearly erroneous. But "[t]he clearly erroneous standard of review is applied where a trial court resolves disputed issues of fact by reference to the credibility of conflicting evidence." *In re J.A. Thompson and Son, Inc.,* 665 F.2d 941, 951 (9th Cir.1982). It has no application where the trial judge applies a legal standard to undisputed facts. *Id.;* 5A Moore's Federal Practice § 52.03[2], at 2662 (1982).

In the present case, the determination whether the dispute constituted a deadlock concerning administration of the fund within the meaning of 29 U.S.C. § 186(c)(5)(B) was an issue of law. The underlying facts are not disputed. The only issue is what

legal conclusion should be drawn from them. Thus, this court's review of the district court's legal conclusion is not constrained by the clearly erroneous standard. *In re Howell,* 638 F.2d 81 (9th Cir.1980); *Soliz v. Plunkett,* 615 F.2d 272 (5th Cir. 1980).

■ The Employers Association contends that the merits of the appeal need not be reached because the trustees do not have authority to increase benefits. This argument is meritless. The trust fund was established to provide health and welfare benefits for the members of the union. To accomplish this purpose the trustees are authorized to develop and establish insurance plans "in such amount and forms as in the absolute discretion of the trustees shall be deemed most beneficial, advantageous and desirable from the standpoint of the monies in the trust fund available for such purpose." This provision of the agreement clearly gives the trustees the power to establish insurance plans and to increase or decrease the benefits.

■ The trust fund is independent of the collective bargaining agreement between the parties. The latter fixes the employer's contribution to the fund, but does not attempt to determine what, if any, particular insurance benefits shall be provided by the trustees. The argument of the Employer Trustees that any increase in benefits should be left to the collective bargaining process ignores the contractual format and was rejected by our court in *NLRB v. Driver Salesmen, etc.,* 670 F.2d 855 (9th Cir. 1982). *See NLRB v. Amax Coal Co.,* 453 U.S. 322, 336, 101 S.Ct. 2789, 2797, 69 L.Ed.2d 672 (1981).[1]

---

1. The atmosphere in which employee benefit trust fund fiduciaries must operate, as mandated by 302(c)(5) and ERISA, is wholly inconsistent with this process of compromise and economic pressure. The management-appointed and union-appointed trustees do not bargain with each other to set the terms of the employer-employee contract; they can neither require employer contributions not required by the original collectively bargained contract, nor compromise the claims of the union or the employer with regard to

the latter's contributions. Rather, the trustees operate under a detailed written agreement, 29 U.S.C. § 186(c)(5)(B), which is itself the product of bargaining between the representatives of the employees and those of the employer. Indeed, the trustees have an obligation to *enforce* the terms of the collective-bargaining agreement regarding employee fund contributions against the employer "for the sole benefit of the beneficiaries of the fund." *United States v. Carter,* 353 U.S. 210, 220 [77 S.Ct. 793, 798, 1 L.Ed.2d 776]. Final-

The key issue in this case is whether the deadlock over additional life and accidental death and dismemberment coverage concerns "administration" of the trust fund.

The fund was established pursuant to 29 U.S.C. § 186(c)(5)(B), which provides in pertinent part: "in the event the employer and employee groups deadlock on the administration of such fund" they shall agree on an impartial umpire, or failing such agreement, a petition may be filed with the district court to appoint such an umpire. The instant trust fund agreement does not track the statutory language. On the contrary, it provides:

> In the event that a disagreement or dispute should occur between the Trustees to the extent that the same shall constitute impossibility on the part of the Trustees to act upon the administration of the Fund involved the Trustees shall select a neutral person to act as an arbitrator to decide the issue resulting from a deadlock.

The employer trustees rely on the language of the agreement and the finding of the district court and contend that a deadlock on a resolution to increase the benefits does not constitute impossibility to act on the administration of the fund—that is, that the trustees are unfettered in their ability to administer the trust fund at the unchanged rate for benefits. Presumably, the argument is that only a deadlock which would hamstring the trustees from doing anything at all would meet the language of the agreement.

■ The union trustees contend that, aside from the question whether the agreement can restrict the statutory language, the agreement in essence conforms to the statutory language, and the meanings of the statute and the agreement are identical. We agree. There was a deadlock which

rendered it impossible for the trustees to act upon an important aspect of the administration of the fund, an increase in benefits. That is all the agreement and the statute purport to require to activate the mechanism for arbitration. *See Barrett v. Miller*, 276 F.2d 429, 430 n. 1 (2d Cir.1960).

Three circuits have considered what constitutes a deadlock in administration. The Second Circuit has interpreted "administration" to include all issues which the trustees have the power to decide under the trust agreement. *Mahoney v. Fisher*, 277 F.2d 5 (2d Cir.1960); *Barrett v. Miller*, 276 F.2d 429 (2d Cir.1960); *see also Singleton v. Abramson*, 336 F.Supp. 754 (S.D.N.Y.1971). Under this broad interpretation the only dispute for which an arbitrator could not be appointed is one in which the trustees attempted to exceed their powers under the trust. *Barrett v. Miller, supra.*

The Eighth Circuit has stated that a deadlock in administration encompasses decisions relating to the day to day management of the trust fund but not extraordinary matters. *Farmer v. Fisher*, 586 F.2d 1226 (8th Cir.1978), held that a decision whether to sue an employer for unpaid contributions arose under the obligations of the collective bargaining agreement and not the trust fund agreement and was such an extraordinary matter excluded from arbitration. The Tenth Circuit has announced no generalized principle but has decided the issue on a case by case basis. In *Bath v. Pixler*, 283 F.Supp. 632 (D.Colo.1968), a district court held that the deadlocked issue there, whether the trust itself might lawfully be terminated and the funds disbursed, was "a legal controversy, not a dispute over the practical administration of the trust" and could not be resolved by an impartial umpire. In *Ader v. Hughes*, 570 F.2d 303 (10th Cir.1978), the court, distin-

ly, disputes between benefit fund trustees over the administration of the trust cannot, as can disputes between parties in collective bargaining, lead to strikes, lockouts, or other exercises of economic power. Rather, whereas Congress has expressly rejected compulsory arbitration as a means of resolving collective-bargaining disputes,

§ 302(c)(5) explicitly provides for the compulsory resolution of any deadlocks among welfare fund trustees by a neutral umpire. Compare 29 U.S.C. § 158(d) with 29 U.S.C. § 186(c)(5); see, n. 12, *supra.*

*N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 336–37, 101 S.Ct. 2789, 2797–98, 69 L.Ed.2d 672 (1981).

guishing between ordinary and extraordinary matters, held that a deadlock on a resolution to amend the trust agreement was not a deadlock on administration and did not bring into play the arbitration requirements of the statute or the agreement.

For the following reasons, we hold that the deadlock in the instant case does concern administration of the trust fund. First, none of the foregoing precedents supports the opposing contention. In fact, the only reported case which we have found or which has been cited by the parties that is directly on point sustains the appointment of an impartial umpire as mandated by the statute. *Petition of Feldman,* 165 F.Supp. 190 (S.D.N.Y.1958).

Second, a series of our cases in other procedural contexts strongly implies that the instant case involves trust administration. These cases primarily involve determining federal jurisdiction under § 302(e) of the Taft-Hartley Act, 29 U.S.C. § 186(e),[2] but incidentally concern the question whether the issue at hand arose from a decision in the "administration" of the fund. In *Alvares v. Erickson,* 514 F.2d 156 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975), we upheld juris-

diction under § 302(e) in an action by trustees of a new welfare trust to recover the share representing contributions on behalf of its members to the former state-wide welfare trust. In doing so, we stated that "[s]urely these changes do not involve mere administration of the trust. They involve a rather drastic change in its structure." *Id.* at 165. This "trust administration—structural deficiency" dichotomy has been carried forward in subsequent decisions. *See e.g., NLRB v. Driver Salesmen,* 670 F.2d 855 (9th Cir.1982); *Waits v. Weller,* 653 F.2d 1288 (9th Cir.1981); *Turner v. Local Union No. 302,* 604 F.2d 1219 (9th Cir.1979); *Wilson v. Board of Trustees,* 564 F.2d 1299 (9th Cir.1977); *Burroughs v. Board of Trustees,* 542 F.2d 1128 (9th Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977). Some of the cited cases involved pension trusts rather than health and welfare trusts, which are treated differently. But with respect to jurisdiction under § 302(e), the same principle is applied: that is, that jurisdiction is limited to so-called "structural deficiencies" and does not extend to day to day fiduciary administration of welfare and pension funds.[3]

---

**2.** (e) The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 381 of Title 28 (relating to notice to opposite party) to restrain violations of this section, without regard to the provisions of section 17 of Title 15 and section 52 of this title, and the provisions of chapter 6 of this title.

29 U.S.C. § 186(e).

**3.** Among the cases cited, the extensive dictum in *Waits v. Weller* is of particular interest. It suggests that a problem may involve structural violations or trust administration and if the latter, the binding arbitration clause of § 302(c)(5)(B) will be activated:

The initial question is whether the dispute here involves trust administration or structural violations. If the dispute involves structural violations, there would be federal jurisdiction under section 302(e) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(e). *See Alvares v. Erickson,* 514 F.2d 156, 165–66 (9th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). If on the other hand, the suit is characterized as involving trust administra-

tion because of alleged breaches of fiduciary duties, it is a close question whether federal law mandates arbitration of civil causes of action for fiduciary breach.

For the district court's guidance, we will briefly outline the two lines of authority. Under section 302(c)(5) of LMRA, 29 U.S.C. § 186(c)(5), arbitration is required whenever "a deadlock on the administration of [the trust] fund" occurs. As interpreted by the majority of federal courts, section 302(c)(5) includes fiduciary violations. ERISA, however, provides a civil cause of action for fiduciary breach. One line of authority reasons that because Congress specifically provided that ERISA was not intended to supersede any existing federal law, ERISA § 514(d), 29 U.S.C. § 1144(d), the arbitration requirement in section 302 of LMRA must be followed. On the other hand, a number of authorities argue that fiduciary claims need not be submitted to binding arbitration because the intent of Congress in enacting ERISA was to provide ready access to the courts with rules advantageous to plaintiffs, and to promote uniformity in the law. These authorities engage in a balancing process, weighing the competing interests of the statutory right of

In the present case, the trustees have deadlocked over a matter of trust administration, an increase of benefits. The statute requires the appointment of an impartial umpire to resolve the deadlock. It may be that the final decision of the umpire will result in a structural violation, but in that event, remedies are available.

Judgment is reversed and cause remanded for entry of an order to appoint an impartial umpire.

access to federal courts against the federal policy favoring arbitration, and conclude that fiduciary responsibility claims are nonarbitrable disputes.

*Waits v. Weller,* 653 F.2d 1288, 1291–92 (9th Cir.1981) (footnotes omitted).