**William S. HAUSKINS, et al.**

v.

**Robert W. STRATTON, et al.**

Civ. A. No. 83–1258.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

July 18, 1983.

---

James Ortego, Lake Charles, La., Gerald M. Feder, Feder & Edes, Washington, D.C., for plaintiffs.

Donald A. Hoffman, Edwin K. Hunter, New Orleans, La., for defendants.

VERON, District Judge.

## RULING

This case involves the level of benefits to be paid to beneficiaries of the Plumbers and Steamfitters Local 106 Pension Trust Fund. (The "Fund"). The participants in the Fund are Local 106 of course, and numerous employers in the Lake Charles area who employ members of the local. Pursuant to the collective bargaining agreement reached between the participants, the employers pay into the Fund a certain sum of money for each manhour of work performed by members of Local 106. This money forms the corpus of the Fund, and is distributed to retirees of the local on the basis of the duration of their membership in the union.

The Fund is administered by a Board of eight Trustees. Four of the Trustees are appointed by the various employers, and the other four are appointed by the union. This even division between the number of Trustees appointed by the union and by management presumably serves to protect the interests of both parties to the collective bargaining agreement. Such a division however lends itself to split decisions by the Board regarding its management of the Fund.

Situations where tie votes, or "deadlocks" occur were foreseen by the Trust settlers. This is evidenced by the existing provisions in the Trust Instrument regarding the procedures to be followed in the event of deadlock. In the matter presently before the court, deadlock has occurred over a proposal submitted by the union-appointed Trustees to increase benefit payments to retirees. The union-appointed Trustees, plaintiffs herein, contend that the matter should be decided by arbitration, and therefore petition this court to compel the commencement of arbitration proceedings. The management-appointed Trustees, defendants herein, contend that under federal law, the matter is non-arbitrable, and therefore oppose the action. Accordingly, this court is now called upon to interpret the deadlock provisions of the Trust Instrument in light of the existing jurisprudence and applicable statutory provisions.

## I. PROVISIONS FOR DEADLOCK

■ The Trust Instrument establishing the Fund provides in Art. V, section 2(a) that:

> In the event the Trustees cannot decide *any matter* or resolve any dispute because of *a tie vote* . . . a majority of the *Trustees may submit* the matter to an impartial arbitrator for hearing and determination of the matter, issue or dispute. . . . (Emphasis added)

The court first notes that there was a unanimous vote to submit this matter to arbitration and that subsequently, the defendants adopted the position that the matter was not a proper subject for arbitration. Given the initial vote by all of the Trustees to arbitrate the matter, the requirement of Art. V, section 2(a), that a majority of the Trustees submit the matter, has been satisfied.

Despite the fact that section 2(a), by its terms, permits "any matter" on which the Trustees deadlock to be submitted to arbitration, defendants contend benefit determinations are excluded from the scope of that general rule. In support of their posi-

tion, defendants rely heavily on *Botto v. Friedberg,* 568 F.Supp. 1253, 3 E.B.C. 2529 (EDNY 1982). In *Botto,* a deadlock was also reached over a proposed increase in benefit levels. The district court there held the matter to be non-arbitrable for two reasons.

First, the court found that under the terms of the Trust Instrument, the dispute was non-arbitrable. Two provisions of the Trust Instrument were scrutinized to reach that result. Under the section setting forth the duties and powers of the Trustees, the Instrument stated that they had authority to make "determinations of benefits *and* administration of the program." (emphasis in original). *Botto, supra,* at 2532. In contrast, the deadlock provisions in *Botto* stated that an arbitrator would be appointed if the Trustees failed to agree only on "a matter relating to the administration of the Pension Trust Fund." *Id.,* at 2530.

The choice of words employed by the drafters of the Trust Instrument in *Botto* is unfortunate, for it distracted that court from the plain meaning of words in rendering its decision.[1] The *Botto* court concluded, and reasonably so, that by using the phrase, "benefits *and* administration," the drafters intended decisions concerning benefits to be distinct from so-called "day-to-day administrative decisions." Bearing this distinction in mind, the *Botto* court also reasoned that administrative questions could be subject to arbitration, but benefits questions could not, because the deadlock provision referred only to "administration," and not "benefits." The court then however, read the statutory language, see n. 1 *supra,* with the same distinction in mind. That is, in reading § 302(c)(5)(B), the court inferred that the statutory use of the term "administration" also excluded benefits decisions. Having determined that Congress, as well as the parties to the collective bargaining agreement, intended "administration" to exclude benefits, the court then examined the Trust's deadlock provisions and determined that under both the terms of the Trust, and the LMRA, that the question of increasing benefits was non-arbitrable.

Although the court is unaware of any legal theory by which one can infer legislative intent from the wording of a contractual instrument executed by private parties, it is not the function of this court to act in an appellate capacity.[2] The purpose of the foregoing analysis is simply to justify a somewhat broader statutory interpretation of Section 302(c)(5)(B) than the *Botto* court allowed itself.

Not being hamstrung by a limited interpretation of "administration" the court can now impart efficacy to the plain meaning of this Trust Instrument. In comparison with the enabling section of Trustee authority in the *Botto* Trust Instrument, stating "bene-

---

1. Although this court has termed the phraseology as "unfortunate," it does bear a certain obvious similarity to language used in § 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B). That section reads in pertinent part:

> (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented *in the administration of such fund,* ... and in the event the employer and employee groups deadlock on the administration of such fund ... such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute.... (emphasis added)

2. A more accurate indication of the legislative intent with respect to the LMRA may be found in the following report:

> The term multiemployer plan is used here in its traditional context, to refer to a plan maintained pursuant to one or more collective bargaining agreements which cover the employees of two or more unaffiliated employers. The signatories to the collective bargaining (or related) agreements pursuant to which a multiemployer plan is maintained, normally agree to contribute at rates specified in such agreement(s) for hours worked by employees, units of production such as coal mined or cargo shipped, or a percentage of compensation, as the case may be. Contributions are made to a pooled funded administered by a board of trustees. The *trustees normally have the authority to manage the assets of the plan and to set eligibility requirements and benefit forms and levels.* (Emphasis added.)
>
> H.Rept. 96–869, Part 1, 96th Cong. 2d Sess. 1980 at 53, 4 U.S.Code, Cong. & Admin.News 1980, 2918 at 2921.

fits *and* administration," the corresponding language in the Trust Instrument here at issue states that:

> The Trustees *shall promulgate a Plan of Benefits* and such rules and regulations as are necessary for the sound and efficient administration of the Trust. (emphasis added). Art. III, § 4.

Furthermore, the Trust Instrument also states:

> Said Trustees shall draft procedures, regulations and conditions for the operation of the Pension Plan, including by way of illustration and not limitation, conditions of eligibility for Participants and Beneficiaries, procedures for claiming benefits, *schedules of type and amount of benefits to be paid,* and procedures for the distribution of benefits. (emphasis added). Art. VI, § 1.

■ The above quoted excerpts make it clear that the Trustees have authority under this Trust Instrument to set benefit levels. In fact, the use of the word "shall," as in "shall promulgate" indicates that it is not only permissive, but that it is mandatory under the terms of the Trust that the Trustees bear the burden of setting benefit levels. The subsequent language found in Article VI, that Trustees "draft . . . schedules of type and amount of benefits to be paid" is also couched in the imperative.

If the Trustees are to fulfill the fiduciary obligations imposed by Article III, to "sound(ly) and efficient(ly) administer" the Trust, it would appear obvious that they be allowed to determine the level of benefits. Given the language of the Trust Instrument, the legislative intent evidenced in n. 2 *supra,* and the fact that benefit determinations may be made by Trustees under § 302(c)(5)(B), it seems clear that the matter at issue should go to arbitration.

There is however, a second reason why the *Botto* court found that benefits decisions are non-arbitrable. The defendants have also argued the point, and therefore, it should be considered here.

As in *Botto,* the defendants here argue that benefit decisions are a subject for collective bargaining and that, pursuant to

sections 404 and 406 of the Employee Retirement Income Security Act ("ERISA"), and *NLRB v. Amax Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), it would be a breach of the Trustees' fiduciary duty to render a decision on a benefit increase. Also as in *Botto,* defendants then conclude, based on the premise that benefits issues cannot properly come before the Board of Trustees, that the subject of benefits cannot validly trigger the Trust's arbitration mechanism. It is not the conclusion with which the court now takes issue, but the premise on which it is founded.

As Trustees, each of the eight Board members are charged with the fiduciary duty of performing their official acts in the best interests of the Trust. The legal origin of this fiduciary status are grounded in traditional principles of equity, and are now codified at ERISA § 404(a)(1)(A), 29 U.S.C. Section 1104(a)(1)(A), which states that a Trustee must:

> . . . discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan. . . .

Additionally, Section 406(b)(2), 29 U.S.C. § 1106(b)(2), states:

> . . . (b) A fiduciary with respect to a plan shall not—(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. . . .

The Supreme Court has interpreted these provisions of ERISA in *NLRB v. Amax Coal Co., supra.* In *Amax* the Court found that

> [I]n short, the fiduciary provisions of ERISA were designed to prevent a trustee "from being put into a position where he has dual loyalties, and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." . . .

The language and legislative history of § 302(c)(5) and ERISA therefore demonstrate that an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him. *Thus, the statutes defining the duties of a management-appointed trustee make it virtually self-evident that welfare fund trustees are not "representatives for the purposes of collective bargaining or the adjustment of grievances" within the meaning of § 8(b)(1)(B).* (emphasis added) *Id.,* at 334, 101 S.Ct. at 2796.

In the preceding excerpt, the *Amax* Court concluded that Trustees do not qualify as collective bargaining representatives within the meaning of section 8(b)(1)(B) of the National Labor Relations Act. The Court nowhere states however that the subject matter with which Trustees and bargaining representatives concern themselves overlap.

The atmosphere in which employee benefit trust fund fiduciaries must operate, as mandated by § 302(c)(5) and ERISA, is wholly inconsistent with this process of compromise and economic pressure. The management-appointed and union-appointed trustees do not bargain with each other to set the terms of the employer-employee contract; they can neither require employer contributions not required by the original collectively bargained contract, nor compromise the claims of the unions or the employer with regard to the latter's contributions. Rather, the trustees operate under a detailed written agreement, 29 U.S.C. § 186(c)(5)(B), which is itself the product of bargaining between the representatives of the employees and those of the employer. *Id.,* at 336, 101 S.Ct. at 2797–98.

A recent clarification of the ruling in *Amax* is found in *Hawkins v. Bennett,* 704 F.2d 1157, 97 L.C. ¶ 10, 109, (1983).

The trust fund is independent of the collective bargaining agreement between the parties. The latter fixes the employer's contribution to the fund, but does not attempt to determine what, if any, particular insurance benefits shall be provided by the trustees. The argument of the Employer Trustees that any increase in benefits should be left to the collective bargaining process ignores the contractual format and was rejected by our court in *NLRB v. Driver Salesmen, etc.,* (93 LC ¶ 13,370) 670 F.2d 855 (9th Cir.1982) *See NLRB v. Amax Coal Co.* (91 LC ¶ 12,821) 453 U.S. 322, 336 [101 S.Ct. 2789, 2797–98, 69 L.Ed.2d 672] (1981). *Id.,* at 1159, 97 LC at 17,494.

The rulings of *Amax, supra,* and *Hawkins, supra* are of course, contrary to the holding in *Botto, supra,* notwithstanding the fact that *Botto* cites *Amax* for the proposition that:

... consideration by the trustees of increased benefits, in the absence of a collectively bargained agreement between Employer Association and the Union, placed the Employer Trustees in the position of dual loyalty prohibited by the Supreme Court in *Amax.* *Botto,* at 2534.

To comment briefly, if dual loyalty existed, such behavior would be prohibited with or without the existence of a collective bargaining agreement. Additionally, it is clear from the holding of *Amax,* that Trustees can act on benefits decisions, as long as they fulfill their fiduciary duty to the fund in doing so.

In conclusion therefore, this court finds no authority which properly supports the defendants' position in this case. The *Botto* decision is unpersuasive, and no other authority has been found by, or provided to the court. On the contrary, ample authority has been cited by the plaintiffs to support the contention that Trustees may act on proposals to increase benefits. *See Hawkins v. Bennett, supra; Petition of Feldman,* 165 F.Supp. 190 (SDNY 1958).

## II. CONCLUSION

Considering the foregoing, the court finds that the question of increasing benefit levels on motion of the union-appointed Trustees is a proper question to be considered by all of the Trustees. Accordingly, the court now directs that the matter be submitted to

arbitration in the normal fashion, as previously agreed to by the unanimous decision of the Board.

SO ORDERED.