927 F.2d 544
 136 L.R.R.M. (BNA) 2965, 59 USLW 2612,
118 Lab.Cas. P 10,642,
13 Employee Benefits Ca 1802
 Oscar W. JACKSON, Clayborne Taite, Jr., George Bru, Albert
Walton, as Trustees of MSSA-ILA Pension Plan and
Trust, Plaintiffs-Appellees Cross-Appellants,
v.
Harry SMITH, Defendant,
Arthur W. Stratton, Hartwell Ludlow, Ned Mattingly, as
Employer Trustees of MSSA-ILA Pension Plan,
Defendants-Appellants Cross-Appellees.
 No. 90-7504.
 United States Court of Appeals,
Eleventh Circuit.
 March 22, 1991.
 
 Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, William B. Harvey, Kirk C. Shaw, Mobile, Ala., for defendants-appellants cross-appellees.
 Frank McRight, McRight, Jackson, Myrick & Moore, Mobile, Ala., for amicus curiae Mobile S.S. Ass'n, Inc.
 Michael A. Figures, Figures, Jackson & Harris, Mobile, Ala., for plaintiffs-appellees cross-appellants.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before FAY and JOHNSON, Circuit Judges, and PECK*, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case arises on appeal from the district court's grant of summary judgment holding that a tie vote among trustees over whether to increase benefits paid by a pension plan ("the Plan") is subject to arbitration.
 
 I. STATEMENT OF THE CASE
 A. Background Facts
 
 2
 The Plan is an "employee pension benefit plan" within the meaning of Section 3(2)(A) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1002(2)(A), and a "multiemployer plan" within the meaning of ERISA Secs. 3(37)(A) & 4001(a)(3), 29 U.S.C. Secs. 1002(37)(A) & 1301(a)(3). The Plan was established pursuant to collective-bargaining agreements between the employers, who are represented by the Mobile Steamship Association ("MSSA"), and Locals 1410, 1410-1, and 1459 of the International Longshoreman's Association ("ILA"). A Board of Trustees, consisting of four trustees named by the union locals and four trustees named by MSSA, administers the trust fund created by the Plan.
 
 
 3
 This suit originated in a dispute over whether the Plan's benefits should be increased. The current level of benefits is set out in the Plan at Article Six, Section 6.01. During a Board meeting on February 23, 1989, Union Trustee Seymour Irby, Jr., proposed that pension benefits be increased by ten percent across-the-board. All Union Trustees voted in favor of the proposal, but all Employer Trustees voted against it. Following the vote, Mr. Irby requested that the increase be submitted to arbitration. The Board unanimously agreed to arbitration.[1]
 
 
 4
 On April 3, 1989, the Board submitted the increase question to the American Arbitration Association ("AAA"). On May 3, 1989, the Employer Trustees withdrew their consent to arbitration by the AAA, claiming that the increase issue was not an arbitrable matter under the Plan. The Employer Trustees noted that Section 6.05 expressly declares that any change in benefits, upward or downward, "shall be made through an amendment to this Plan" and that Section 14.01 states that the Plan may be amended "by the vote of seventy-five percent (75%) of all Trustees." The Employer Trustees therefore asserted that the proposal for an increase failed because it did not receive the requisite seventy-five percent vote, not because the vote resulted in a tie. The Union Trustees disagreed and initiated this litigation in the district court. The AAA responded by stating that it would hold the arbitration proceeding in abeyance pending the outcome of this action. On May 25, 1989, the Board considered a second proposal to grant a ten percent increase in benefits. Once again, the vote resulted in all of the Union Trustees voting in favor of the increase and all of the Employer Trustees voting against it.
 
 B. Procedural History
 
 5
 On June 9, 1989, the Union Trustees filed the instant action against the Employer Trustees. The Union Trustees sought, among other things, an order declaring (1) that the benefit increase proposal was subject to arbitration, (2) that the action of the Employer Trustees in withdrawing their consent to arbitration violated the terms of the Plan,[2] and (3) that, because Section 14.01 requires a seventy-five percent affirmative vote to amend the Plan and Section 6.05 requires an amendment in order to increase benefits, any vote of less than seventy-five percent created a deadlock within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 186(c)(5)(B), thereby requiring arbitration. The Employer Trustees filed their answer on July 5, 1989.
 
 
 6
 On September 9, 1989, the Union Trustees filed their First Amended Complaint which, in addition to those claims asserted in the initial complaint, sought an order declaring that Sections 11.05 and 11.06 mandated arbitration because a tie vote had occurred on the proposed benefit increase. On April 16, 1990, the Union Trustees filed their motion for summary judgment. On May 4, 1990, the Union Trustees filed their Second Amended Complaint seeking, in addition to the claims already asserted, an order declaring (1) that the Employer Trustees had breached their fiduciary duty under Section 11.05 of the Plan and 29 U.S.C. Sec. 186(c)(5)(B) by refusing to submit the proposed increase to arbitration, and (2) that Section 14.01 of the Plan, requiring a seventy-five percent vote to amend the plan to increase benefits, violates the provisions of 29 U.S.C. Sec. 186(c)(5)(B) which require that a pension plan be evenly administered by an equal number of labor and management trustees.
 
 
 7
 The Employer Trustees filed their motion for summary judgment on May 11, 1990. The district court entered its ruling on June 8, 1990, holding that Section 11.06 required the Trustees to submit the proposal to arbitration because the vote on the proposed pension increase resulted in a tie. Despite denying the Union Trustees leave to file the Second Amended Complaint, the court also held that the Employer Trustees had not violated any fiduciary duty by withdrawing their consent to arbitration.[3] The Employer Trustees appealed, and the Union Trustees cross-appealed. The district court denied the Employer Trustees' motion to stay enforcement of judgment pending appeal and ordered the pension increase to proceed to arbitration. The court ordered, however, that, if the arbitrator awarded an increase, no increase had to be paid until appeal was heard. But the court also ordered that, if affirmed, interest on any increase must be paid retroactively to the effective date of the increase.
 
 
 8
 In this appeal, we first consider whether the pension increase is an arbitrable matter. We also determine whether the Employer Trustees violated their fiduciary duty by withdrawing their consent to arbitration unilaterally and whether the district court erred by denying the Union Trustees leave to file the Second Amended Complaint.
 
 II. ANALYSIS
 
 9
 This Court reviews de novo a district court's order granting a motion for summary judgment. Ordway v. United States, 908 F.2d 890, 893 (11th Cir.1990). This Court must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All evidence and reasonable factual inferences therefrom are reviewed in the light most favorable to the party opposing the motion. Hinesville Bank v. Pony Express Courier Corp., 868 F.2d 1532, 1535 (11th Cir.1989).
 
 A. Arbitration
 
 10
 The Union Trustees argue that because the proposal for an increase resulted in a tie vote it is subject to arbitration. As authority for their position, they cite to Section 11.06 of the Plan which expressly states that if "the Trustees cannot decide any matter or resolve any dispute because of a tie vote" that issue is subject to arbitration. The Union Trustees also point to 29 U.S.C. Sec. 186(c)(5)(B) which provides that if the trustees are deadlocked over an issue pertaining to the administration of a plan they must submit that issue to arbitration. Citing holdings by three Circuits that benefit increases fall within the administration of a plan, they argue that Section 186(c)(5)(B) requires that the Employer Trustees submit the disputed benefit increase proposal to arbitration. See Geigle v. Flacke, 768 F.2d 259, 262 (8th Cir.1985); Hauskins v. Stratton, 721 F.2d 535, 537 (5th Cir.1983); Hawkins v. Bennett, 704 F.2d 1157, 1162 (9th Cir.1983).
 
 
 11
 The Employer Trustees argue that Section 6.05 of the Plan specifically states that any change in benefits, upward or downward, "shall be made though an amendment" to the Plan. They point out that Section 14.01 declares that an amendment requires approval by seventy-five percent of the Trustees. They claim that, by requiring a change in benefits to be accomplished only through an amendment requiring seventy-five percent approval, the parties to the collective-bargaining agreement that produced the Plan intended for a change in benefits to be treated as an "extraordinary" matter outside the arbitration provisions of the plan and the LMRA. See Ader v. Hughes, 570 F.2d 303, 307 (10th Cir.1978) (holding that the amendment of a plan was not administrative and therefore did not fall within the arbitration provision of 29 U.S.C. Sec. 186(c)(5)(B)). Moreover, they contend that the proposed benefits increase did not pass because of a tie vote. Rather, it did not pass because it failed to receive seventy-five percent approval. Accordingly, they argue that the tie-vote arbitration provision does not apply to the proposal for increasing benefits. The Employer Trustees support this argument by noting that had the vote been 5-3 the proposal would still have failed and yet the arbitration provision would not have been triggered because there was no tie vote.
 
 
 12
 To resolve this dispute, this Court must determine whether an increase in benefits is an administrative matter or an extraordinary matter. The cases cited by the Union Trustees are distinguishable from the instant case. In Hawkins, 704 F.2d at 1159-60, the plan at issue was entirely silent on the level of benefits to provide employees or the procedure to follow to change the level of benefits. Given this factual situation, the Ninth Circuit determined that a benefit increase fell within the category of trust administration and ordered arbitration pursuant to Section 186(c)(5)(B). In Hauskins, 721 F.2d at 537, the plan was also silent on whether benefit changes were a matter of trust administration. The Fifth Circuit, citing Hawkins, supra, held that benefit changes were an administrative matter subject to arbitration. Id. In Geigle, 768 F.2d at 262, increasing benefits was specifically listed under the section of the plan outlining the powers of the trustees. Although the trustees had to amend the plan to increase benefits, the plan referred to any change or modification of the plan as an amendment. Id. Moreover, unlike the case at bar, such amendments apparently required only a simple majority in order to be enacted. Id. Finally, the Eighth Circuit noted that the trustees had routinely exercised their authority to amend the plan to increase benefits. The Eighth Circuit stated that under such circumstances a benefit increase is an administrative matter.
 
 
 13
 By contrast, Section 6.01 of the Plan at issue in this litigation establishes a fixed schedule of benefits. Moreover, Section 6.05 expressly outlines the procedure for changing the level of benefits, stating that a change, either upward or downward, "shall be made through an amendment to this Plan." Finally, Section 14.01 of the Plan states that an amendment to the Plan requires approval of seventy-five percent of the Trustees.
 
 
 14
 Pension fund trustees have no authority to resolve issues that are properly the subject of collective bargaining. See NLRB v. Amax Coal Co., 453 U.S. 322, 336-37, 101 S.Ct. 2789, 2797-98, 69 L.Ed.2d 672 (1981); Hauskins, 721 F.2d at 537. Moreover, "when neither the collective-bargaining process nor its end product violates any command of Congress, a federal court has no authority to modify the substantive terms of a collective-bargaining contract." United Mine Workers of Am. Health & Retirement Funds v. Robinson ("UMW "), 455 U.S. 562, 576, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982).
 
 
 15
 This Plan is the product of a series of collective-bargaining agreements between the MSSA and the Locals 1410, 1410-1 and 1459 of the ILA. The express language of the Plan supports the Employer Trustees' argument that the parties to the collective-bargaining contract decided to treat changes in benefits as a special matter. First, the Plan specifically sets forth the level of benefits to be paid to each beneficiary. Moreover, the Plan expressly characterizes changes in benefits as amendments and requires that such amendments be approved by seventy-five percent of the Trustees before taking effect. Although Congress mandated that all ERISA plans be drafted in accord with certain requirements,[4] it did not state that changes in benefits fall under the administrative powers of the trustees. This Court can find nothing in the language or legislative history of Section 186(c)(5)(B) that leads to the conclusion that benefit increases automatically fall under the administration of a plan. See H.Rep. No. 510, 80th Cong., 1st Sess., reprinted in 1947 U.S.Code Cong.Serv. 1135, 1171. It may be that, in the absence of plan language to the contrary, changes in benefits should ordinarily be treated as an administrative matter. See Hawkins, supra. Where, as in the present case, the parties have established during the course of collective bargaining the level of benefits as well as the procedure for changing those benefits, federal courts are barred from modifying those terms. See UMW, 455 U.S. at 576, 102 S.Ct. at 1234.
 
 
 16
 The Union Trustees also argue that the seventy-five percent approval provision to amend the Plan violates the requirement of Section 186(c)(5)(B) that plans shall be administered by an equal number of labor and employer representatives. The Union Trustees contend that if a benefit increase is conditioned on seventy-five percent approval then Employer Trustees will have an absolute veto over this issue, thereby giving the Employer Trustees more power than the Union Trustees.
 
 
 17
 The flaw in this argument is evident. The seventy-five percent approval requirement applies to changes in benefits, either upward or downward. While the Employer Trustees retain an absolute veto over increases in benefits, the Union Trustees retain an absolute veto over decreases in benefits. The parties stand in equal positions; neither can change benefits without the assistance of the other. Accordingly, we find the Union Trustees' argument that 29 U.S.C. Sec. 186(c)(5)(B) invalidates Section 14.01 of the Plan to be meritless.
 
 
 18
 The Union Trustees also argue that the Trustees have violated their fiduciary duty to administer the Plan "solely in the interest of the participants and beneficiaries," 29 U.S.C. 1104(a)(1)(A), because Plan beneficiaries have received no increases for the past thirteen years. They argue that the evidence shows that the current contribution rate to the Plan would easily support the proposed increase. If, by their refusal to increase benefits, the Employer Trustees have violated their fiduciary duty to manage the trust in the interest of the beneficiaries, the Union Trustees or the beneficiaries who have been allegedly wronged should bring a cause of action directly under 29 U.S.C. Sec. 1104(a)(1)(A). Provided the substantive terms of a plan produced through the collective-bargaining process do not violate federal law, we have no authority to modify such terms. UMW, 455 U.S. at 576, 102 S.Ct. at 1234.
 
 
 19
 The Union Trustees' final argument is that the plain language of Section 11.06 applies to the facts of this case. Section 11.06 requires that if the Trustees cannot resolve any issue or dispute because of a tie vote then the issue should be submitted to arbitration. The Union Trustees argue that a tie vote occurred here and therefore the increase question should be submitted to arbitration. The weakness of this argument is that it reads each section of the Plan in isolation and makes no attempt to give meaning and effect to every section. See Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1518 (9th Cir.1985). Section 6.05 expressly states that changes in benefits require amendments and Section 14.01 requires amendments to obtain seventy-five percent approval. Moreover, the arbitration provision, Section 11.06, is contained within Article 11 which describes the powers and operations of the Trustees. Section 11.04 states that the Trustees have the full authority "to administer the Trust Fund." As discussed, supra, in drafting the Plan the parties intended changes in benefits to be an extraordinary matter, requiring an amendment to the Plan, rather than an administrative matter. Accordingly, the arbitration provision does not apply. For these reasons, the district court erred in ruling that the proposed benefit increase was subject to arbitration.[5]
 
 B. Employer Trustees' Fiduciary Duty
 
 20
 Section 11.05(c) of the Plan states that individual trustees may not take any action for or on behalf of the trustees between meetings except as authorized by the Board. The Union Trustees cite this section to argue that the district court erred when it found that the Employer Trustees did not violate their fiduciary duty by unilaterally withdrawing their consent to arbitration. The district court held that the Employer Trustees were entitled to have the question of whether an increase in benefits was an arbitrable issue determined by the federal court.
 
 
 21
 The Supreme Court has held that "[u]nless the parties clearly and unmistakably provide otherwise, the question whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Accordingly, the district court properly concluded that the Employer Trustees did not violate their fiduciary duty by withdrawing their consent to arbitration.
 
 C. The Second Amended Complaint
 
 22
 The Union Trustees also argue that the district court erred in refusing to permit them leave to file a Second Amended Complaint. The Union Trustees claim that they moved for leave to file the Second Amended Complaint after their motion for summary judgment in order to conform the issues more clearly with the evidence pursuant to Fed.R.Civ.P. 15(b). The Second Amended Complaint asserted three claims in addition to the claims asserted in the First Amended Complaint. These included two claims for breach of fiduciary duty and one claim seeking a finding that Section 14.01 of the Plan, which required seventy-five percent approval for amendments, violated the arbitration requirement of Section 186(c)(5)(B).
 
 
 23
 Because we find no merits to these claims, see II(A) & II(B) supra, we decline to order the district court to grant the Union Trustees leave to file the Second Amended Complaint.
 
 III. CONCLUSION
 
 24
 For the foregoing reasons, we REVERSE the summary judgment of the district court that a change in benefits is an arbitrable issue under the Plan. We AFFIRM, however, the district court's holding that the Employer Trustees did not breach their fiduciary duty by withdrawing their consent to arbitration.
 
 
 
 *
 Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation
 
 
 [1]
 Section 11.06 of the Plan provides for arbitration if the "Trustees cannot decide any matter or resolve any dispute because of a tie vote."
 
 
 [2]
 In the alternative, the Union Trustees sought an order declaring that, even if the Employer Trustees could withdraw their consent, Section 11.06 required the appointment of an arbitrator
 
 
 [3]
 The Union Trustees asserted this claim only in the Second Amended Complaint
 
 
 [4]
 Congress required all ERISA plans to contain clauses providing for arbitration if the trustees deadlocked on a matter having to do with the administration of the plan, 29 U.S.C. Sec. 186(c)(5)(B), and for a procedure to amend the plan, 29 U.S.C. Sec. 1102(b)(3)
 
 
 [5]
 Because we hold that the proposed benefit increase is not an arbitrable matter, we need not reach the district court's ruling on the award of prejudgment interest