586 F.2d 1226
 99 L.R.R.M. (BNA) 3247, 84 Lab.Cas. P 10,900
 Fred L. FARMER, Terry V. Allen, William C. Eads,
Individually and as Union-Appointed Trustees of
the K. C. Power and Light Pension Fund, Appellees,
v.
R. W. FISHER, P. L. Metzger, K. G. Hovland, Individually and
as Employer-Appointed Trustees of the K. C. Power
and Light Pension Fund, Appellants.
 Nos. 78-1120, 78-1121.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1978.
Decided Nov. 7, 1978.
 
 A. Drue Jennings, Kansas City, Mo., for appellant; S. P. Cowley, Kansas City, Mo., on brief.
 Michael D. Gordon, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for appellee; Scott A. Raisher, Kansas City, Mo., on brief.
 Before ROSS, and HENLEY, Circuit Judges, and MARKEY, Chief Judge.*
 MARKEY, Chief Judge.
 
 
 1
 Appeal from a judgment of the United States District Court for the Western District of Missouri, holding that trustees of a pension fund could sue an employer for contributions withheld during a strike. We reverse.
 
 Background
 
 2
 On January 1, 1967, a declaration of trust was entered into between the Kansas City Power & Light Company (Employer) and Local Unions 412, 1464, and 1613, International Brotherhood of Electrical Workers (Unions), to provide employee pension benefits. On July 1, 1972, a declaration of trust was entered into to provide health and medical benefits. The trust funds were established under § 302(c)(5)(B) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c) (5)(B) (1947),[1] and the provisions of the trust declarations are identical, except for the benefits they provide. Both funds are administered by a six member Board of Trustees, three designated on behalf of the Employer (Employer trustees), and three designated on behalf of the Unions (Union trustees).
 
 
 3
 The pertinent sections of the trust declarations provide:
 
 
 4
 2.04 The Trustees are hereby designated as the persons to receive Contributions specified by the collective bargaining agreements and are hereby vested with all right, title and interest in and to such monies and all interest or other income accrued or accruing thereon or therefrom and are authorized to receive and to be paid the same. (Emphasis added.)
 
 
 5
 3.06 In the event the Board of Trustees is unable to agree upon the exercise of its powers, the Trustees shall attempt to agree upon the appointment of an impartial arbiter. If the Trustees are also unable to agree upon the designation of an arbiter within thirty days' time, either the Employer Trustees or the Union Trustees may petition the District Court of the United States for the Western District of Missouri to appoint an impartial arbiter. The decision of an arbiter, however designated, shall be binding upon all parties concerned. The expense incident to any proceedings needed to resolve a deadlock shall be borne by the Trust Fund.
 
 
 6
 4.01 The Employer shall make contributions hereunder in accordance with the terms and conditions of the collective bargaining agreements from time to time in effect between it and the Unions.
 
 
 7
 4.02 Payments required to be made to the Fund may be amended or supplemented in subsequent collective bargaining agreements or renewals, extensions, supplements, or mutually agreed interpretations of the present collective bargaining agreements, but not otherwise.
 
 
 8
 6.03 No dispute or question arising under this Trust or the Health & Welfare Plan shall be subject to the grievance or arbitration procedure provided for in any collective bargaining agreement. All such disputes or questions shall be resolved by the Trustees, or if the Trustees are unable to agree, in the manner provided in Section 3.06.
 
 
 9
 The contributions to be made by the Employer to the trust funds are specified by the collective bargaining agreements between the Unions and the Employer, which also provide:
 
 
 10
 Any question or dispute regarding interpretation or application of any provision of this agreement which cannot be adjusted by negotiation and conferences between the respective representatives of the Company and the Union, or by resort to the grievance procedure provided for herein where individual grievances are involved, shall be submitted to and settled by arbitration as hereinafter provided.
 
 
 11
 On July 8, 1974, a strike occurred, continuing until September 30, 1974. The Employer made payments to the Pension and Health and Welfare Trusts during July, but advised the Unions and the trustees that it would not make further contributions for the duration of the strike, because of its contemplated length.[2]
 
 
 12
 At meetings of the Boards of Trustees in August and September, the Union trustees moved that the trusts bring suit against the Employer for contributions to the trust funds. The Union trustees voted yes and the Employer trustees voted no. The Union trustees then moved the appointment of a neutral arbiter to break the deadlock. The deadlock vote was repeated. On February 26, 1975, the Union trustees filed petitions in the district court, seeking appointment of an impartial arbiter, pursuant to § 302(c)(5), to decide whether the trusts should sue the Employer for the August and September, 1974, contributions.
 
 
 13
 Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Employer trustees moved to dismiss the petitions for lack of subject matter jurisdiction, arguing that the issue of whether to institute suit is outside the scope of "administration" of the trust funds, as that term is used in § 302(c)(5)(B). They moved, in the alternative, for a stay of proceedings pending arbitration to construe allegedly controlling procedural and substantive provisions in the respective collective bargaining agreements.
 
 
 14
 The court denied the motion to dismiss, stating that whether to sue raised a question of stating a claim upon which relief can be granted, that the trustees had the capacity to sue for overdue contributions, and that bringing suit was within the ambit of "administration" as used in the statute. The court denied the motion to stay, stating that the suits arose from administration of the trusts, and § 6.03 of the trust declarations mandated exemption from the arbitration clause of the collective bargaining agreements.
 
 
 15
 On July 24, 1975, the court filed its order appointing an arbiter, and directing that he file a written report of his decision in each case. On August 5, 1977, the arbiter filed his decision, recommending that the Board of Trustees sue the Employer. By order filed December 15, 1977, the court granted the Union trustees' motion to enforce the opinion and decision of the arbiter, and denied the Employer trustees' motion to disapprove, vacate, or modify the opinion and decision of the arbiter. Judgment was entered January 4, 1978. Notice of appeal was filed January 18, 1978.
 
 Issues
 
 16
 The issues are whether (1) the Employer trustees timely appealed the arbiter's appointment, and (2) the district court erred in appointing an arbiter.
 
 OPINION
 
 17
 1. The Employer trustees timely appealed.
 
 
 18
 The Union trustees allege that the July 24, 1975 order appointing an arbiter was a final and appealable decision within the meaning of 28 U.S.C. § 1291, requiring an appeal to be filed pursuant to 28 U.S.C. § 2107.
 
 The order appointing the arbiter states:
 
 19
 The arbiter shall make his own arrangements to meet with the respective trustees at such times and places as convenient for the parties and Shall file a written report of his decision in each case. (Emphasis added.)
 
 
 20
 Although the statute is silent on the point, the district court, by appointing the arbiter for quasi-legal services and requiring filing of a written report, in effect treated the arbiter as a master and retained jurisdiction over the matter.[3] The Employer trustees objected to appointment of an arbiter upon filing of the original petition, and after the written report was filed. Those objections, made prior to the district court's confirmation of the report, were timely made, entitling the Employer trustees to challenge the validity of the appointment on appeal from the ruling of the district court. See Cruz v. Hauck, 515 F.2d 322, 326 (5th Cir. 1975), Cert. denied, 424 U.S. 917, 96 S.Ct. 1118, 47 L.Ed.2d 322 (1976). Cases cited by the Union trustees are inapposite, the arbiters in those cases not having been required to report back to the court.
 
 
 21
 2. The district court erred in appointing an arbiter.
 
 
 22
 Jurisdiction to appoint under § 302(c)(5)(B) requires a deadlock on administration of the trust fund. The Employer trustees assert that the present dispute rises from the collective bargaining agreements, not from the trust declarations, and therefore is not a matter of trust administration. We agree.[4]
 
 
 23
 The event giving rise to the present dispute was the refusal of the employer to make trust fund contributions during August and September of 1974. Because the contributions and the criteria for their payment are specified by the collective bargaining agreements, and because § 4.01 of the trust declarations themselves require that Employer contributions be governed by the terms of the collective bargaining agreements, whether contributions are owed depends upon interpretation of those agreements.
 
 
 24
 Mere origination of the dispute in the collective bargaining agreements would not in every case preclude its characterization as a matter of trust administration. Similarly, origination in the trust declaration, would not alone render the matter one of trust administration. Courts have recognized a distinction between ordinary matters, which constitute trust fund "administration," and extraordinary matters, which do not. Ader v. Hughes, 570 F.2d 303, 307 (10th Cir. 1978); Bath v. Pixler, 283 F.Supp. 632, 635 (D.C.Colo.1968). The present dispute is not a matter of day-to-day management of the trust funds.[5] It falls within the category of extraordinary matters not included in the administration of trust funds.
 
 
 25
 The parties to the collective bargaining agreements are required by the terms of those agreements to settle questions of interpretation of those agreements by negotiation and conferences or by arbitration.[6] The contention of the Union trustees, that arbitration of questions arising from the collective bargaining agreements is inadequate to protect the rights of beneficiaries and dependents of Union members, and of retired employees to whom the Union owes no direct duty, is without merit. As the district court explained in IBEW v. Dave's Electric Service, Inc., 382 F.Supp. 427, 433 (M.D.Fla.1974), Remanded on other grounds, 545 F.2d 987 (5th Cir. 1977):
 
 
 26
 Requiring arbitration, of course, will not subvert any rights. It will merely change the initial forum in which those rights are determined to the preferred forum (of arbitration) as a matter of national labor policy and the selected forum by the terms of the agreement itself. The trustees (and the beneficiaries of the trust) will still have all substantive rights to which they are entitled under the collective bargaining agreement.
 
 
 27
 For the reasons stated, we reverse the judgment of the district court.
 
 
 28
 Reversed.
 
 
 
 *
 The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 § 186. Restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees or groups or committees of employees; exceptions; penalties; jurisdiction; effective date; exception of certain trust funds
 (c) The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deaklock, (sic) such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement . . . .
 
 
 [2]
 The parties involved stipulated that as a matter of practice, the Employer did not make payments for employees who had been laid off, or granted a leave of absence contemplated to exceed thirty days
 
 
 [3]
 The propriety of the requirement that a report be filed and jurisdiction be retained is not before us, neither party having objected thereto at the time the appointment was made, or having alleged on appeal that the requirement was improper
 
 
 [4]
 The right of trustees as a body to sue for contributions under other circumstances, as, for example, where the right to contributions is undisputed, is not before us. See Lewis v. Benedict Coal Corp., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Lewis v. Quality Coal Corp., 243 F.2d 769 (7th Cir. 1957). Nor does the present case involve the status of trustees as indispensable parties to a suit for enforcement of an arbiter's award. See Warshaw v. Local No. 415, 325 F.2d 143, 144-45 (5th Cir. 1963)
 
 
 [5]
 The Union trustees point to a receipt of contributions as a right conferred on the trustees by § 2.04 of the trust declarations. However, rights and powers of the trustees unrelated to day-to-day management of the trust funds are not commensurate with "administration" as used in § 302(c)(5)(B). See Ader, 570 F.2d at 307
 
 
 [6]
 Contributions being governed by the collective bargaining agreements, § 6.03 of the trust declarations, prohibiting arbitration of disputes arising from the trust declarations, is inapplicable