Robert GEIGLE and Edward M. O'Reilly, as Trustees of Meatcutters Local 88 and Food Employers' and Allied Industry Pension Plan, Petitioners,

v.

Robert J. FLACKE and Victor G. Horn, as Trustees of Meatcutters Local 88 and Food Employers' and Allied Industry Pension Plan, Respondents.

No. 84-222C(B).

United States District Court, E.D. Missouri, E.D.

Aug. 2, 1984.

James K. Cook, James I. Singer, St. Louis, Mo., for petitioners.

Fred Leicht, Jr., Thomas Wack, St. Louis, Mo., for respondents.

## MEMORANDUM OPINION

REGAN, District Judge.

Pursuant to a Pension Trust Agreement, to which Local 88 of the Meatcutters' Union and various employers in the food industry are parties, a Trust Fund was established in order to provide pension benefits to certain employees and their families and dependents. The Trust Agreement provides for four trustees equally divided between representatives of the union and the employer group to manage and control the Trust Fund.

As authorized and directed by the Trust Agreement, the Trustees have established a Pension Plan by a written instrument (the Plan Document) which, inter alia, sets forth the benefits to be provided under the Plan. From time to time, prior to August, 1983, the Trustees have unanimously increased the amount of the benefits to be provided by the Plan.

In August, 1983, the Union Trustees sought to further increase the monthly benefits for participants. The proposed increase for participants who retire after July 1, 1983, was $14.40 per year of benefit service to a maximum of 40 years of benefit service, and the proposed benefit increase for participants who retired prior to July 1, 1983 was 7½%. However, both Employer Trustees voted against the proposal, with the obvious result that there was a tie vote. The affirmative vote of a majority of Trustees was required for passage. The opposition of the Employer Trustees to the proposed increase was based on their concern that *in their opin-*

*ion* it would adversely affect the soundness of the Trust Fund.

Thereafter, relying on their construction of Section 5.7 of Article V of the Trust Agreement, the Union Trustees requested the Employer Trustees to select an impartial umpire or take any other step to submit the dispute to arbitration. The Employer Trustees refused to do so on the ground that the issue of benefit increases was not subject to arbitration. This suit by the Union Trustees followed, for the purpose of obtaining a court-appointed umpire to decide whether the proposed increase in pension benefits should be implemented. Both parties have moved for summary judgment.

Section 5.7 of Article V provides in relevant part that "(i)n the event the Trustees ... are unable to agree by a majority vote ... *upon any matter in connection with the administration or operation of the Plan or Trust ...*" a deadlock shall be deemed to exist and the Trustees may select a neutral person as an impartial arbitrator, with the further provision that if a majority of the Trustees are unable to agree on the selection of such arbitrator, any Trustee may petition the Court for the appointment of an impartial arbitrator to decide the dispute.

The issue briefed by the parties is whether the refusal of the Employer Trustees to agree to an amendment of the Plan Document increasing the amount of pension benefits created a deadlock upon a "matter in connection with the administration or operation of the Plan" as those terms are used in the Trust Agreement and in Section 302(c)(5)(B) of the Labor Management Relations Act.

However, a preliminary question raised sua sponte by the Court (which the parties were accorded an opportunity to brief) is what effect, if any, the provisions of the Trust and Plan Agreements relating to the powers of the Trustees to amend the Plan

of benefits may have upon the result of this case.

We note that Section 7.3 of Article VII of the Trust Agreement provides that "(t)he Trustees shall have such powers as may be necessary to discharge their responsibilities in managing and controlling the *general* operations and administration of the Plan, including "(a) To determine, from time to time ... the nature, type, character and amounts of benefits to be provided ... and "(u) To amend the plan of benefits described in the written [Plan Document] including any amendment which affects the nature, amount, condition and duration of any benefits *based on what in their opinion the Plan can reasonably provide after adequate provision for the Plan's funding requirements....*" Any amendment to such written [Plan] instrument *shall be in accordance with the amendment provisions thereof.*" (Emphasis supplied).

In view of the requirement that any amendment to the *Plan* Document be "in accordance with the amendment provisions *thereof*", we initially turn to the amendment provisions of *that* Document which are contained in Section 11.1 of Article XI thereof. Therein it is provided: "The Trustees may amend or modify this Plan at any time, *in accordance with the Trust Agreement, except* that no amendment or modification may: (a) alter the basic purposes of the Plan; (b) conflict with any applicable law or government regulation; [or] (c) cause the use or diversion of any part of the Trust for purposes other than those authorized therein; ..."

In light of *the absence of any other amendment provision* in the Plan Document, the requirement that any amendment be *"in accordance* with the Trust Agreement can only mean that the *same procedure* prescribed for amendments to the Trust Agreement be followed for amending the Plan Document.[1] Any other construction would render meaningless the specific

---

**1.** Simply stated, the Trust amendment procedure requires the Trustees to submit to the Union and the employers the amendment upon which they have agreed. The amendment be-

comes effective *only* if neither the Union nor the employers object thereto within 30 days thereafter.

caveat in the Trust Agreement that any amendment to the Plan Document be "in accordance with the amendment *provisions*" of such Document.

Petitioners argue that the phrase "in accordance with the Trust Agreement" means simply that any amendment be "in keeping with the purposes and limitations" of that Agreement. We do not agree. The major difficulty with adopting petitioners' construction is that it completely ignores and renders surplusage the remainder of Section 11.1 which *specifically* and in terms *excepts* from the amendment process, inter alia, any amendment which would "alter the basic purposes of the Plan" (as set forth in Section 3.1 of the Trust Agreement) or "cause the use or diversion of any part of the Trust for purposes other than those authorized therein."

The foregoing express exception or limitation on amendments to the Plan Document is virtually a rescript of the *identical* limitation on amendments to the Trust Agreement which is set forth in Section 10.2 of Article X of the Trust Agreement. In our judgment, this language in Section 11.1 of the Plan Document was inserted to make crystal clear that in following the *method* of amendment prescribed in Section 10.1 of the Trust Agreement the *same* limitation would apply.

We have not overlooked the supplemental stipulation of the parties representing that heretofore on several occasions the Trustees have increased the level of benefits without complying with the Section 10.1 amendment procedure. On that premise, plaintiffs argue that by such conduct the Trustees have thereby "interpreted" the phrase "in accordance with", and that such "interpretation" should be binding on the Court. Again, we do not agree. Not only do we fail to discern any ambiguity in the amendatory provisions, but there is no showing that in increasing the benefits as they did, the Trustees were consciously intending to interpret such provisions. We surmise that in taking their present position the Trustees are fearful that otherwise they may be subject to liability for their past actions. However, in light of the specific provisions of the Trust Agreement (in Section 5.8 thereof) immunizing the trustees from liability, any such danger is nonexistent. We add that the validity of the earlier increases is not before us. Only an employer (or the Union) could attack them, in which case principles of waiver and estoppel may well be applicable.

It is, of course, true that the mere requirement that the Trustees follow the amendment method prescribed in Section 10.1 of the Trust Agreement would not necessarily moot this action, inasmuch as the initial step is the concurrence of a majority of the Trustees. However, in view of the fact that the Trustees have unanimously taken the firm position that they will not submit the Plan amendment to the Union and employers in the event an arbitrator decides in favor thereof, we believe it would be an exercise in futility to make such an appointment even if the "deadlock in administration" provision should be held to apply to the tie vote on the amendment, and we decline to do so.

Although the foregoing ruling is dispositive of this case, it is our view, based on *other* provisions of the Trust Agreement, adverted to infra, that the requirement of a deadlock "upon any matter in connection with the *administration or operation* of the Plan" as a condition precedent to arbitration has reference only to disputes in the day-to-day administration or operation of the Plan, and is not applicable to an "extraordinary" matter such as an amendment to the Plan increasing the level of benefits. See *Farmer v. Fisher*, 586 F.2d 1226 (8 Cir.1978),[2] and *Ader v. Hughes*, 570 F.2d 303 (10 Cir.1978), both of which are distinguishable on their facts, but not on the

---

**2.** Plaintiffs argue that *Farmer* has been "overruled" by *Prosser's Moving & Storage Co.* 700 F.2d 433 (8 Cir.1983). However, the *Prosser's* court explicitly stated that it was "overruling" *Farmer* only to the extent that case was incon-

sistent with the holding in *Prosser's* that pension trustees may come into court (to collect allegedly delinquent employer contributions) "without first getting the union to invoke the machinery of arbitration."

principles of law. And see also *Botto v. Friedberg*, 568 F.Supp. 1253 (D.C.N.Y. 1982) which supports the basic principle that the fiduciary duty to be exercised by the Trustees in their *"sole and absolute discretion"* in matters that conceivably could result in a substantial increase in the liability of the Trust Fund for unfunded vested benefits cannot be abdicated to an outside third party.[3]

It is to be noted that the power of amendment as to benefit increases (Section 7.3 of the Trust Agreement) is *expressly* limited to increases "based on what *in (the) opinion (ofthe Trustees) the Plan can rea-sonably provide after adequate provision for the Plan's funding requirements..."* Petitioners would excise the words "in *their* (i.e., the Trustees') opinion", and sub-stitute the opinion of an outside third par-ty.

The issue which petitioners seek to have resolved by an arbitrator is whether their proposed increase in benefits should be ef-fected. Presumably, in deciding this issue, the arbitrator would first be required to determine whether *in his opinion,* con-trary to the opinion of the Employer Trus-tees, the proposed increase could adversely affect the liability of the Trust Fund for unfunded vested benefits. However, what the parties agreed to was to have *the opin-ion of a majority of the Trustees* govern, even if an outside third party could reason-ably differ with the opinion of two of the Trustees.

So, too, Section 12.13 of Article XII of the Trust Agreement provides that "(f)rom time to time the Trustees may, *in their sole and absolute discretion,* increase the amount of the pension benefit being paid to former Participants." "Sole and absolute" can mean only that the *discretion* to effect an increase is vested *exclusively* in the Trustees. Of course, such discretion must be exercised in good faith, so that if a Trustee were to act in bad faith or fraudu-lently (which petitioners do not here con-tend) he would be in breach of his fiduciary

duties, for which there are remedies other than arbitration.

Denying arbitration in this case could not possibly interfere with the day-to-day man-agement of the Plan, and there is no con-tention to the contrary. Nor does the re-striction of arbitrability with respect to benefit increases limit arbitration to "mat-ters of a ministerial or insignificant na-ture", as petitioners suggest. The Trust Agreement sets forth *numerous* areas in which disagreements on substantial mat-ters could well arise and be subject to arbitration. We hold only that a *difference of opinion* as to whether an increase in benefits would adversely affect the liability of the Trust Fund for unfunded vested benefits and thus the soundness of the Fund is a matter of an extraordinary na-ture which under the terms of the specific Trust Agreement and the Plan Document here involved is not subject to arbitration.

Accordingly, the motion of respondents for summary judgment is hereby SUS-TAINED, and the motion of petitioners for summary judgment is hereby DENIED. Judgment will be entered dismissing the petition.

---

**3.** *Botto* has been criticized (*Hauskins v. Stratton,* 721 F.2d 535, 537 (5 Cir.1984), primarily for its further holding that the question of benefit in-creases is properly the subject of collective bar-gaining. We do not so hold. Nor do we hold that a Trust Agreement could not have been drafted which would permit arbitration of bene-fit increase proposals.