768 F.2d 259
 120 L.R.R.M. (BNA) 3313, 103 Lab.Cas. P 11,655,
6 Employee Benefits Ca 1929
 Robert GEIGLE and Edward M. O'Reilly, as Trustees of
Meatcutters Local 88 and Food Employers' and
Allied Industry Pension Plan, Appellants,
v.
Robert J. FLACKE and Victor G. Horn, as Trustees of
Meatcutters Local 88 and Food Employers' and
Allied Industry Pension Plan, Appellees.
 No. 84-2130.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1985.
Decided July 17, 1985.
Rehearing Denied Aug. 13, 1985.
 
 James K. Cook, St. Louis, Mo., for appellants.
 Fred Leight, Jr., St. Louis, Mo., for appellees.
 Before HEANEY, BRIGHT, and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 The two Union Trustees of Meatcutters Local 88 and Food Employers' and Allied Industry Pension Plan sought to increase the benefit level under the Plan. The two Employer Trustees would not agree to the proposed change, so the Union Trustees brought this lawsuit, seeking either to compel the Employer Trustees to submit the dispute to an impartial arbitrator or, if the parties could not agree on an impartial arbitrator, to have the court appoint an impartial umpire to resolve the dispute under Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5) (1982). The District Court held that the dispute was not subject to arbitration and granted summary judgment for the defendants, the Employer Trustees. The Union Trustees appeal, arguing principally that the question whether benefits should be raised relates to the "administration" of the fund and is therefore arbitrable under the governing agreement. We reverse and remand for entry of an order requiring the defendant Employer Trustees to submit this dispute to an impartial arbitrator, in accordance with Section 5.7 of the Trust Agreement.
 
 I.
 
 2
 Local Union No. 88, United Food and Commercial Workers, AFL-CIO-CLC, a labor organization representing employees working in the meat cutting and related industries, and various employers entered into a Trust Agreement entitled "Amalgamated Meat Cutters' and Butcher Workmen's Local No. 88 and Food Employers' and Allied Industry Pension Trust Agreement." That Trust Agreement created a trust fund for the benefit of the employees and their families. As authorized by the trust agreement, the Employer Trustees, Robert J. Flacke and Victor G. Horne, and the Union Trustees, Robert Geigle and Edward M. O'Reilly, established a written Pension Plan, which sets forth the benefits provided under the Plan.
 
 
 3
 Under the terms of the Trust Agreement, the Trustees are authorized to establish and change benefit levels, if in their opinion the Plan can reasonably provide the benefit levels so fixed, from the resources contributed to the trust fund in accordance with the various relevant collective-bargaining agreements. On fourteen separate occasions, the Trustees have authorized increases in monthly benefits. In August 1983 the Union Trustees again sought to increase the monthly benefits. The Union Trustees voted in favor of the motion, and the Employer Trustees voted against it, resulting in a tie vote. A majority vote of the Trustees was required for passage. The Employer Trustees opposed the current benefit increase because, among other things, they felt it would adversely affect the trust fund's soundness.
 
 
 4
 The Union Trustees requested that the Employer Trustees help select an impartial arbitrator; the Employer Trustees refused to take any steps toward arbitration, arguing that the dispute over benefit increases is not subject to arbitration. The Union Trustees brought suit, requesting that the Court order the Employer Trustees to submit the dispute over benefit increases to an impartial arbitrator, or, in the alternative, that the Court appoint the umpire under Section 302(c)(5). Both parties moved for summary judgment.
 
 
 5
 The District Court first noted, and all parties agreed, that increasing benefits required an amendment to the Plan Document. The Court then looked to Article VII, Section 7.3 of the Trust Agreement, where the Trustees' powers are listed, and specifically to subsection (u), which says that "[a]ny amendment to such written instrument [the Pension Plan] shall be in accordance with the amendment provisions thereof." The amendment provision of the Pension Plan provides in relevant part:
 
 ARTICLE XI
 
 6
 [of the Pension Plan]
 
 Amendment and Termination
 
 7
 11.1 Power to Amend. The Trustees may amend or modify this Plan at any time, in accordance with the Trust Agreement, except that no amendment or modification may:
 
 
 8
 (a) alter the basic purposes of the Plan;
 
 
 9
 (b) conflict with any applicable law or government regulation;
 
 
 10
 (c) cause the use or diversion of any part of the Trust for purposes other than those authorized herein;
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 (e) conflict with the provisions of a collective bargaining agreement.
 
 
 14
 Since there was no other amendment provision in the Plan Document, the Court held that the phrase "in accordance with the Trust Agreement" could only mean "by use of the same procedure as set out in the Trust Agreement." The District Court felt that this construction was compelled, particularly, by the language in the Trust Agreement, Article VII, Section 7.3(u) which states that "amendment[s] to [the Pension Plan shall] be in accordance with ... amendment provisions thereof." (District Court's emphasis.) The Court felt that phrase would be rendered meaningless by any other construction.
 
 
 15
 The method of amending the Trust Agreement is as follows:
 
 ARTICLE X
 
 16
 [of the Trust Agreement]
 
 Amendments
 
 17
 10.1 Method of Amendment. This Agreement may be amended in writing at any time as follows: The Trustees, in accordance with the voting provisions of section 5.5, shall first concur in the amendment and thereafter submit same in writing to the Unions and the Employers. Within 30 days after date of mailing of said amendment any Employer or Union may present in writing to the Trustees his objection thereto. If Unions representing a majority of Participants or if Employers employing a majority of the Participants present such objection, then the amendment shall not become effective. If, however, within the aforesaid time neither the Unions representing a majority of Participants nor Employers employing a majority of the Participants present such objection, then the amendment shall become effective as of the effective date set forth in the amendment.
 
 
 18
 10.2 Limitation on Amendments. No amendment shall be adopted which alters the basic purpose of the Plan [or] conflicts with any applicable law or government regulation....
 
 
 19
 The question of the interrelationship between the Trust Agreement and the Plan Document, and the possible effect of that interrelationship on this case, was posed by the District Court sua sponte. The Trustees stipulated that they have never interpreted the phrase "in accordance with the Trust Agreement" as meaning in accordance with the procedures for amending the Trust Agreement. Rather, they have continuously interpreted it "as meaning in keeping with the purposes and subject to the limitations of the Trust Agreement." Joint Appendix p. 135. As we have noted, the Trustees have fourteen times amended the Pension Plan by raising the level of benefits payable. At no time did they submit any such amendment to the Unions and Employers, as they would have done had they believed that the amendment was subject to the procedure prescribed by Article 10.1 of the Trust Agreement.
 
 
 20
 The District Court declined to follow this interpretation-in-practice of the Trustees, holding that "there is no showing that in increasing the benefits as they did, the Trustees were consciously intending to interpret such provisions." Geigle v. Flacke, 590 F.Supp. 1068, 1070 (E.D.Mo.1984). The Court also "surmise[d] that in taking their present position the Trustees are fearful that otherwise they may be subject to liability for their past actions." Id. In our view, these considerations, though relevant, cannot override the well-established rule that actions by trustees, in this case their prior interpretation of the Pension Plan, are to be upheld unless arbitrary and capricious, e.g., Delaney v. Union Carbide Corp., 749 F.2d 17, 19 (8th Cir.1984). Actions often speak louder than words.
 
 
 21
 The Trustees themselves, moreover, have stipulated in this action that their past conduct amounted to an interpretation of the Pension Plan, and the appellees' own brief in this Court states, p. 6, that the Trustees "had interpreted the phrase in the [a]mendment provision of the Plan (Section 11.1)," to permit amendment of the Plan to raise the level of benefits without going through the procedures specified in the Trust Agreement. This interpretation is not arbitrary and capricious. The phrase "in accordance with the Trust Agreement," on which the District Court placed a great deal of emphasis, is not unambiguous. It can mean, as the District Court thought, "by the same method or procedure as the Trust Agreement," but it can also mean simply that no amendment should alter the basic purpose of the Pension Plan, a prohibition contained in the Trust Agreement itself. Such a reading of the language may render Section 11.1(a) of the Pension Plan, which provides that no amendment shall be adopted which alters the basic purpose of the Plan, repetitious or duplicative, at least in part, and there is a common canon of construction that counsels against an interpretation that would render meaningless as surplusage any portion of the writing being construed. This canon, however, is not an invariable rule. It is simply a guide to the parties' intention. Sometimes, even in written contracts, people repeat themselves, and the Trustees' assertion, by their long course of past practice, that the language involved here is at least partly repetitious, is not so unreasonable as to deserve the label arbitrary and capricious. Labor agreements are frequently written with less precision than statutes or bond indentures. They commonly leave considerable room for play in the joints, and that is one reason, we suppose, that trustees are allowed to select any permissible interpretation of the language, so long as they do not act arbitrarily and capriciously.
 
 II.
 
 22
 The District Court held, in the alternative, that before arbitration may be ordered, the Trust Agreement, Section 5.7, requires a deadlock in a "matter in connection with the administration or operation of the Plan," and that increasing benefits is an extraordinary matter, not one simply of administration, and is thus not subject to arbitration. We disagree. Section 7.3 of the Trust Agreement specifically sets out the powers of the Trustees in connection with the operation and administration of the Plan. One such power, listed in subsection (u), is the power to increase benefits. As we have pointed out previously, the Trustees have exercised that power fourteen times in the past. A power that the Trustees have exercised, seemingly routinely, on so many prior occasions cannot be appropriately classified as "extraordinary." Thus, Farmer v. Fisher, 586 F.2d 1226 (8th Cir.1978), which distinguishes between extraordinary matters and "administration," is not controlling. The question presented here is whether a proposal to raise benefits is part of "the administration or operation of the Plan or Trust" within the meaning of the arbitration provision, Section 5.7. Having considered all of the relevant portions of both the Pension Plan and the Trust Agreement, we are convinced that benefit levels are a matter of "administration" for this purpose. In the face of this agreement by the parties, Farmer, which interpreted the term "administration" in Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. Sec. 186(c)(5), rather than the provisions of a collective-bargaining or other agreement between the parties, cannot be controlling. Further, the question in Farmer was whether the decision to bring suit for contributions owed by an employer was one of "administration"--an issue going beyond a decision that could be put into effect internally by the trustees themselves.[1]
 
 III.
 
 23
 We conclude, for the reasons stated, that the question of raising the level of benefits in accordance with the motion made by the Union Trustees is one of "administration or operation of the Plan or Trust," and is therefore arbitrable under Section 5.7 of the Trust Agreement. Whether a dispute is arbitrable, in a substantive sense, under the words of the parties' agreement is a question for the courts. See, e.g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). We therefore remand this case to the District Court with directions to issue an order requiring the defendant Employer Trustees to submit to arbitration the question whether benefit levels should be raised as proposed by the Union Trustees' motion. We have no reason to doubt that the defendants will obey the Court's order and carry out their contractual obligations in good faith. This disposition makes it unnecessary to consider whether, absent such obedience, the District Court should proceed under Section 302(c)(5) to appoint an impartial umpire. We consider it preferable for the matter to be resolved by an impartial individual of the parties' own choosing, rather than by someone appointed by the Court.
 
 
 24
 Reversed and remanded with instructions.
 
 
 
 [1]
 Defendants argue in the alternative that the issue of raising benefits is unsuitable for arbitration because the plan documents give the trustees alone, as fiduciaries, the duty of deciding what the level of benefits should be. We disagree. The agreement itself characterizes this question as one of "administration"--or at least the trustees have reasonably so interpreted it--and such questions are arbitrable under Section 5.7