# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-1686

_____

David Gillick; Bradley Grant; Robert Bieg, Jr.; Terry Briggs; Corey Black;
Michael Lutz, As Employer Trustees of the Construction Laborers Welfare Trust
of Greater St. Louis

*Plaintiffs - Appellants*

v.

Gary Elliott; Brandon Flinn; Matthew Andrews; Richard McLaughlin; Don Willey;
Steve MacDonald, As Union Trustees of the Construction Laborers Welfare Trust
of Greater St. Louis

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 18, 2021
Filed: June 16, 2021

_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Appellants and Appellees are the employer-appointed and the union-appointed trustees, respectively, of the Greater St. Louis Construction Laborers Welfare Trust established under § 302(c)(5) of the Labor Management Relations

Act, 29 U.S.C. § 186(c)(5) (LMRA). At a Board of Trustees meeting, the trustees "deadlocked" on a motion brought by one of the employer-appointed trustees. The employer-appointed trustees then filed a complaint in the district court[1] seeking the appointment of an impartial umpire to resolve the deadlock. The district court dismissed the complaint and declined to appoint an umpire, and the employer-appointed trustees appeal. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

The Greater St. Louis Construction Laborers Welfare Trust (Trust), created pursuant to a Restated Agreement and Declaration of Trust (Trust Agreement), is a multi-employer benefit trust that provides benefits to union members and their dependents. The Trust Agreement, entered into by representatives of the participating unions and employers who contribute to the Trust, vests the authority to administer the Trust in a 12-member Board of Trustees. See R. Doc. 31-1, at 5 ("The power, authority and duty to manage, maintain and control this Trust and the assets thereof, as well as to formulate and administer its employee benefit plan or plans thereunder, shall be vested in a Board of Trustees (sometimes collectively called the 'Trustees' herein) . . . ."); see also R. Doc. 31-1, at 5 (requiring a 12-member Board). Six of the Trustees are selected by labor organizations whose members are Trust beneficiaries (Union Trustees), and the other six are selected by the associations representing contributing employers (Employer Trustees).

The Trust Agreement[2] sets forth the Trustees' authority and responsibilities. It requires the Trust to be administered in compliance with the LMRA and the

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

[2]The Employer Trustees did not attach the Trust Agreement to their complaint, instead attaching it only to their response in opposition to the Union Trustees' motion to dismiss. In deciding a motion to dismiss, courts ordinarily do not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). However, "documents necessarily embraced by the complaint are not matters outside the pleading[s].

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (ERISA). Section 6.15(C) authorizes the Trustees to "[e]mploy or contract with" attorneys to give the Trustees advice or assist in carrying out the Trustees' responsibilities under ERISA or the Trust Agreement and to pay such attorneys with Trust assets. See R. Doc. 31-1, at 18. Moreover, Section 6.15(A) authorizes the Trustees to "[a]llocate to one or more of said Trustees specific trustee responsibilities, obligations or duties." R. Doc. 31-1, at 17. Section 6.02 provides that the Trustees "shall operate and administer this Trust . . . and shall have all general and incidental powers and duties appropriate to the performance of such functions, including, but without limitation, the powers and duties listed in the following Sections." R. Doc. 31-1, at 11. However, the Trustees are powerless to "add to or amend the provisions of this Trust Agreement, such being reserved by the parties hereto."[3] R. Doc. 31-1, at 11.

The Trust is advised by counsel. At a May 19, 2019 Board of Trustees meeting, one of the Employer Trustees brought a motion seeking to allow the Employer Trustees and Union Trustees each to pay, from the Trust, the "reasonable and customary fees" of their own separate legal counsel(s) to "assist such Trustees in carrying out any responsibilities which they have under ERISA or the trust instrument." R. Doc. 1, at 3. In other words, the motion sought to allow each

---

Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (citations omitted). Here, the content of several provisions of the Trust Agreement was alleged in the complaint. Additionally, no party has questioned the Trust Agreement's authenticity. Accordingly, we will consider the entire Trust Agreement because it was necessarily embraced by the pleadings.

[3]A narrow exception allows the Trustees to amend the Trust Agreement in the "limited capacity set forth in Section 6.06(G) regarding preservation of the Fund's tax status." R. Doc. 31-1, at 11. Because the Fund's tax status is not at issue here, this exception is not implicated.

"faction" of Trustees to hire counsel to advise that faction alone and to pay the separate counsel with Trust assets.

The vote on the motion resulted in a deadlock, with all Employer Trustees voting in favor of it and all Union Trustees voting against it. The Trust Agreement provides that if the Trustees "deadlock on any matter arising in connection with the administration of the Plan, or on any matter within their jurisdiction under the terms hereof," they will agree upon an "impartial umpire to decide the dispute." R. Doc. 31-1, at 21. If the parties cannot agree upon an impartial umpire, then the umpire "shall be designated upon the request of any Trustee by the Chief Judge of the United States District Court for the Eastern District of Missouri, Eastern Division." R. Doc. 31-1, at 21. The parties could not agree upon an impartial umpire.

The Employer Trustees filed suit in the Eastern District of Missouri, requesting that the district court appoint an impartial umpire to resolve the deadlocked motion pursuant to § 302(c)(5) of the LMRA. In their complaint, the Employer Trustees alleged the substance of their proposed motion, that the vote resulted in a deadlock, and that the parties could not agree upon an impartial umpire. The Union Trustees filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the deadlocked motion was not an ordinary issue of trust administration but rather was an "extraordinary" issue not subject to resolution by an umpire, and that the proposed motion violated the LMRA's "equal representation" requirement.

The district court granted the motion to dismiss and declined to appoint an umpire, concluding that the Employer Trustees' proposed motion was invalid under the LMRA's "equal representation" requirement. The Employer Trustees appeal the dismissal of their complaint. "We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo." K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017).

-4-

II.

"When Congress enacted § 302 its purpose was . . . to deal with problems peculiar to collective bargaining," such as "corruption . . . through bribery of employee representatives by employers, . . . extortion by employee representatives, and . . . the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." Arroyo v. United States, 359 U.S. 419, 424-26 (1959) (footnotes omitted). Accordingly, subsection 302(a) prohibits an employer or association of employers "from, *inter alia*, making payments to any representative of its employees, including the employees' union and union officials." Local 144 Nursing Home Pension Fund v. Demisay, 508 U.S. 581, 585 (1993). Subsection 302(b)(1), "the 'reciprocal' of subsection (a), mak[es] it unlawful for employee representatives to receive the payments prohibited by subsection (a)." Id. (citing Arroyo, 359 U.S. at 423).

"Subsection 302(c), however, provides exceptions to the prohibitions." Id. at 586. In particular, "paragraph (c)(5) excepts payments to an employee trust fund so long as certain conditions are met." Id. Such conditions include a written agreement governing the trust fund and mandatory administration of the trust fund by a board of trustees comprising an equal number of employee and employer representatives. See 29 U.S.C. § 186(c)(5)(B). The latter condition is known as the "equal representation" requirement. See Quad City Builders Ass'n v. Tri City Bricklayers Union No. 7, AFL-CIO, 431 F.2d 999, 1003 (8th Cir. 1970). "While this arrangement assures that both blocks of Trustees maintain equal voting power, it also results in deadlocks where the Employer and Union Trustees uniformly disagree." Emp. Trs. of W. Pa. Teamsters v. Union Trs. of W. Pa. Teamsters, 870 F.3d 235, 238 (3d Cir. 2017). Accordingly, "in the event the employer and employee groups deadlock on the administration of [the] fund," the LMRA requires the written agreement to provide that "the two groups shall agree on an impartial umpire to decide such dispute." 29 U.S.C. § 186(c)(5)(B). The agreement must also provide that, if the trustees cannot agree within a reasonable time, "an impartial umpire to

decide such dispute shall, on petition of either group, be appointed by the district court . . . for the district where the trust fund has its principal office." Id.

We have recognized the district court's authority to appoint an impartial umpire in two scenarios: (1) when the trustees deadlock on a matter of trust fund "administration" within the meaning of § 302(c)(5); and (2) when the trustees deadlock on a matter designated as arbitrable by an umpire in a written agreement between the parties. Regarding the first scenario, we have stated that "administration" in § 302(c)(5) connotes "day-to-day management of the trust funds." Farmer v. Fisher, 586 F.2d 1226, 1230 n.5 (8th Cir. 1978) ("[R]ights and powers of the trustees unrelated to day-to-day management of the trust funds are not commensurate with 'administration' as used in § 302(c)(5)(B)."), overruled on other grounds by Robbins v. Prosser's Moving & Storage Co., 700 F.2d 433 (8th Cir. 1983) (en banc). Moreover, "[c]ourts have recognized a distinction between ordinary matters, which constitute trust fund 'administration,' and extraordinary matters, which do not." Id. at 1230 (citing Ader v. Hughes, 570 F.2d 303, 307 (10th Cir. 1978), and Bath v. Pixler, 283 F. Supp. 632, 635 (D. Colo. 1968)). In Farmer, we held that a deadlocked motion was not a matter of trust fund "administration" under § 302(c)(5) where the motion concerned whether the trust would file suit against an employer for delinquent contributions. See id. at 1229. We concluded that the deadlock "[arose] from the collective bargaining agreements, not from the trust declarations, and therefore [was] not a matter of trust administration." Id. We reasoned that the deadlock was "not a matter of day-to-day management of the trust funds"; rather, it "[fell] within the category of extraordinary matters not included in the administration of trust funds." Id. at 1230. Thus, we found that the district court had erred in appointing a neutral arbiter. Id.

We have also recognized that the trust agreement itself may set forth the types of trustee deadlocks that an umpire must resolve. In Geigle v. Flacke, 768 F.2d 259, 262-63 (8th Cir. 1985), we concluded that, based on the relevant trust agreement, the trustees' dispute over whether to increase plan benefits was due to be resolved by an umpire. The trust agreement called for arbitration by an impartial umpire

when the trustees deadlocked on a "matter in connection with the administration or operation of the Plan." Id. at 262. Moreover, the trust agreement stated that one of the trustees' powers "in connection with the operation and administration of the Plan" was to increase benefits. Id. We additionally noted that the trustees had decided to increase benefits 14 times in the past, and we explained that a power the trustees had exercised "on so many prior occasions cannot be appropriately classified as 'extraordinary.'" Id. We distinguished the case from Farmer, explaining that the question in Geigle was "whether a proposal to raise benefits [was] part of 'the administration or operation of the Plan or Trust' within the meaning of the arbitration provision." Id. "In the face of this agreement by the parties, Farmer, which interpreted the term 'administration' in Section 302(c)(5) of the [LMRA], rather than the provisions of a collective-bargaining or other agreement between the parties, cannot be controlling." Id. at 263.

The Tenth Circuit has similarly recognized the distinction between deadlocks that are arbitrable under § 302(c)(5)'s definition of "administration" and deadlocks that are arbitrable under the terms of a written agreement. See generally Ader, 570 F.2d 303. In Ader, the court held that § 302(c)(5) did not require that an umpire be appointed to break a deadlock concerning a proposed amendment to a trust agreement. Id. at 308. The court acknowledged a distinction between "ordinary" matters of trust administration, which are arbitrable under § 302(c)(5), and "extraordinary" matters, which are not. Id. at 307. The court did not "attempt to draw the line, but simply recognize[d] that one exists." Id. It concluded that "[w]hatever else may be meant by trust fund 'administration,' the term does not include decisions to amend or not amend a 302(c)(5) trust agreement." Id.; see also id. at 308 (stating that the court was not "convince[d] . . . that Congress considered amendment of a trust agreement to be an administrative matter"). Nevertheless, the court upheld the district court's appointment of an umpire based on the language of the trust agreement. See id. at 308-09. "The trust agreement state[d] that an umpire may be appointed whenever the trustees come to a deadlock on 'any question' except those 'in connection with the interpretation or enforcement of any bargaining agreement.'" Id. at 308. "The trust agreement stated that all questions were

-7-

arbitrable, with some exceptions that were made explicit. Questions of amendment were not excepted." Id. at 309.

Here, the Trust Agreement requires the appointment of an impartial umpire whenever the Trustees "deadlock on any matter arising in connection with the administration of the Plan, or on *any matter within their jurisdiction* under the terms hereof." R. Doc. 31-1, at 21 (emphasis added). Thus, we begin with the Trust Agreement because it contemplates the appointment of an umpire to resolve a broader range of issues than "day-to-day management of the trust funds," see Farmer, 586 F.2d at 1230. The Employer Trustees argue that Sections 6.15(A) and 6.15(C), read together, authorize hiring separate counsel to advise only the employer faction and paying for such separate counsel out of the Trust. They also insist that the separate legal services contemplated by the deadlocked motion would assist them in carrying out their responsibilities *to the Trust*, and therefore, the deadlocked motion is within the Trustees' authority to implement. We disagree. Nothing in the Trust Agreement permits the indefinite delegation of authority to a Trustee faction to hire service providers, paid for by the Trust, who will serve and report to only that faction. Construing the Trust Agreement as a whole, including that it must be administered in compliance with the LMRA and ERISA, the "specific trustee responsibilities" that Section 6.15(A) allows to be delegated must refer to responsibilities that a Trustee has as a member of the Board, not as a member of a Trustee faction. Cf. NLRB v. Amax Coal Co., a Div. of Amax, Inc., 453 U.S. 322, 334 (1981) ("[A]n employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him.").

Based on the entirety of the Trust Agreement, we conclude that the delegation proposed by the Employer Trustees' motion is beyond the Trustees' authority to implement. Such delegation would require an amendment to the Trust Agreement,[4]

---

[4]It is a separate question—one that we do not decide today—whether a trust agreement *could* authorize such a delegation consistent with the LMRA's "equal

and the Trustees expressly lack the authority to amend. Moreover, unlike <u>Geigle</u>, there is no allegation or argument that the Board has authorized this separate counsel arrangement on any prior occasion. Because the proposed delegation and amendment to the Trust Agreement are beyond the Trustees' authority to implement, the deadlocked motion is not a "matter arising in connection with the administration of the Plan, or . . . a[] matter within [the Trustees'] jurisdiction." <u>See</u> R. Doc. 31-1, at 21. Therefore, the Trust Agreement does not authorize the appointment of a neutral umpire to resolve the deadlocked motion. <u>Cf.</u> <u>Geigle</u>, 768 F.2d at 262-63; <u>Ader</u>, 570 F.2d at 308-09.

Because we find that adopting the Employer Trustees' proposed motion would require amending the Trust Agreement, we also necessarily conclude that the deadlocked motion does not concern trust fund "administration" under § 302(c)(5). Amending a trust agreement is not "a matter of day-to-day administration of the trust funds." <u>See</u> <u>Farmer</u>, 586 F.2d at 1230; <u>see also</u> <u>Ader</u>, 570 F.2d at 307 ("Whatever else may be meant by trust fund 'administration,' the term does not include decisions to amend or not amend a 302(c)(5) trust agreement."). Therefore, because the deadlocked motion is not a matter of trust "administration" under either the Trust Agreement or § 302(c)(5), the district court did not err in declining to appoint an umpire. Although our reasoning differs from the district court's, we may affirm "on any ground supported by the record." <u>See</u> <u>Christiansen v. W. Branch Cmty. Sch. Dist.</u>, 674 F.3d 927, 934 (8th Cir. 2012) (citation omitted).

III.

We affirm the district court's judgment.

_____

---

representation" requirement and ERISA. Even assuming this delegation were permissible, the present Trust Agreement does not provide for it.