**CHEMICAL OVERSEAS HOLDINGS, INC., Credit Suisse First Boston, and Dresdner Bank Lateinamerika Ag, Petitioners,**

v.

**REPUBLICA ORIENTAL DEL URUGUAY, Respondent.**

No. 05 Civ. 260(GEL).

United States District Court, S.D. New York.

March 25, 2005.

Louis B. Kimmelman, Dana C. MacGrath, Marissa Molé, O'Melveny & Myers LLP, New York, New York for Petitioners Chemical Overseas Holdings, Inc., Credit Suisse First Boston, and Dresdner Bank Lateinamerika AG.

John W. Nields, Jr., Laura S. Shores, Howrey Simon Arnold & White LLP, Washington, D.C. for Respondent Republica Oriental del Uruguay.

## OPINION AND ORDER

LYNCH, District Judge.

On December 31, 2004, a distinguished panel of international arbitrators unanimously entered an award in favor of petitioner financial institutions and against respondent, the Republic of Uruguay. In this action, petitioners seek confirmation of the arbitration award and judgment thereon, as well as interest and attorneys' fees, pursuant to the Federal Arbitration Act, 9 U.S.C. § 207. The petition will be granted.

The Court has carefully reviewed petitioners' submissions, establishing that all prerequisites to enforcement of an arbitra-

tion award have been met. Indeed, Uruguay does not dispute petitioners' showing in this regard. Uruguay raises only one issue in opposition to the confirmation of the award. That sole argument is that confirming the award places Uruguay in the "untenable position of being subject to two irreconcilably inconsistent court orders" (Opp.Mem.1), because an Uruguayan court, in an action in which Uruguay is not itself a party, brought by plaintiffs not parties to the arbitration or to this action, has issued an order attaching the proceeds of petitioners' suit in favor of those plaintiffs. Uruguay claims that the existence of this attachment justifies this Court in declining to confirm the award, or in staying the confirmation action, because the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("UN Convention") permits a court to do either if the "recognition or enforcement of the award would be contrary to public policy," UN Convention, art. V(2)(b), and it would violate the public policy favoring international comity to place Uruguay in the position of having to violate either the order of an American court or the order of one of its own courts. (Opp.Mem.5–7.)

■ This argument is without merit. First, Uruguay has not sought to dispute petitioners' argument that it has waived this objection by failing to present it to the arbitrators.[1] If a party "fail[s] to raise [an] issue . . . to the arbitrators, the issue is forfeited." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir.1998). As the Seventh Circuit has ruled in the context of a labor dispute, "Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration which is to provide a fast and inexpensive method for the resolution of . . . disputes." *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir.1993) (internal quotation and citation omitted). The point applies equally to international commercial arbitration. Uruguay does not dispute petitioners' claim that it did not raise the Uruguayan attachment order as a defense before the arbitration panel.

■ Uruguay could perhaps argue that the defense did not need to be raised in the arbitration, because it does not preclude the arbitration award, only its judicial enforcement. The argument would be that the award of the arbitrators itself does not create Uruguay's dilemma, because until the arbitration award is judicially enforced, there is no conflict with the Uruguayan attachment, as the arbitration award, without judicial enforcement, does not create a binding obligation on the losing party. That argument would not be correct, however. Uruguay's claim of inconsistency applies as much to the arbitrators' award as it does to a judicial judgment enforcing the award. The arbitral award creates a binding legal obligation, as a matter of contract, in the losing party. *Florasnyth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984). If Uruguay believed that the creation of an obligation in favor of petitioners against it is inconsistent with the Uruguayan attachment, it should have raised that issue before the arbitrators, and not waited to use it in confirmation proceedings in the courts.

In any event, however, there is no inconsistency between the Uruguayan attach-

---

1. Petitioners' waiver argument was first made in its reply brief. (Reply Mem. 3–4.) This is entirely appropriate, since the waiver argument did not become relevant until Uruguay raised the Uruguayan court order as a defense to the confirmation in its opposition papers.

Uruguay has not sought permission to file a sur-reply or other additional submission to respond to petitioners' argument, nor has it sought oral argument, to challenge either the factual assertions or legal reasoning underlying petitioners' waiver argument.

ment and the judgment sought by petitioners. The arbitration award establishes that Uruguay owes petitioners $100,000,000 plus assorted fees and interest, and petitioners are entitled to have that obligation reduced to judgment. The Uruguayan court has not adjudicated any rights between Uruguay and petitioners, and has made no ruling, in contradiction to the arbitrators' award, that Uruguay owes no such debt. To the contrary, the Uruguayan attachment order appears to presume that such a debt does exist, because it is precisely that debt that is the subject of the attachment.

The Uruguayan court has simply awarded a provisional remedy in favor of the plaintiffs before it against petitioners. There is nothing contradictory about the related assertions that Uruguay owes money to the petitioners, and that the petitioners might owe money to the Uruguayan plaintiffs. Uruguay's position will not be "untenable." Rather, it will be in the familiar position of a party who owes money to a creditor, who is assailed by both the creditor and by the creditor's creditors. What is certain, and what is not contested in the Uruguayan courts, is that the money does not belong to Uruguay. If a judgment is entered against Uruguay in the instant matter, it will not be without remedies, including an interpleader action or payment of the funds into court in Uruguay or in the United States, to satisfy its obligations under the judgment without violating any other decree, and to submit to an appropriate court the question of to whom the money is to be paid in order to satisfy the judgment.[2]

But this Court need not decide the legal effect of any actions Uruguay might take in response to the judgment. It is suffi-cient for present purposes to hold that entry of a judgment confirming the arbitrators' award that Uruguay owes a fixed sum to petitioners is not inconsistent with any order of the Uruguayan courts, and therefore violates neither public policy nor comity.

Since Uruguay has raised no other objection to the arbitrators' award, the petition to confirm the award is granted. Judgment will be entered in the form submitted by petitioners.

SO ORDERED:

---

2. Moreover, petitioners emphasize that they seek only the entry of judgment, not its enforcement, further forestalling any conflict with the order of the Uruguayan court. In-deed, petitioners have included in their proposed order of judgment a provision precluding enforcement of the judgment without further application to this Court.