# United States Court of Appeals
## For the First Circuit

No. 05-2614

SALEM HOSPITAL,

Plaintiff, Appellee,

v.

MASSACHUSETTS NURSES ASSOCIATION,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard Stearns, U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

James F. Lamond for appellant.
Richard P. Ward for appellee.

June 2, 2006

**STAHL**, <u>**Senior Circuit Judge**</u>.  This is an appeal by the Massachusetts Nurses Association ("MNA" or "the Union") of the district court's order vacating an arbitration award.  The award was rendered pursuant to the binding arbitration process for dispute resolution provided for in the collective bargaining agreement between the Union and Salem Hospital.  We affirm the decision of the district court, although for different reasons from those offered by that court.

## I. Background

### A. The Dispute

The Union represents most of the nurses who work at Salem Hospital in Salem, Massachusetts.[1]  Among the represented group of nurses is the nursing staff of the Hospital's Post-Anesthesia Care Unit ("PACU").  Up until 1993, the PACU unit had a fully staffed night shift of nurses during the week and used an on-call system for night shifts on the weekends.[2]  In 1993, the Hospital eliminated the weekday full night shift of nurses and switched to the on-call system during the week as well.[3]  The collective

---

[1]The employee bargaining unit encompasses "all full-time and regular part-time registered nurses employed by the Hospital," excluding certain managers and supervisors.

[2]On-call requires the nurses who are on call for any given night to carry a pager and be ready to come to work if needed.

[3]As used in this case, "the week" means 7:00 AM Monday through 7:00 AM Saturday, with "the weekend" running from Saturday morning to Monday morning.  Thus, the two "weekend overnights" at issue in this case comprise the early morning hours (12:30 AM to 6:30 AM) of

bargaining agreement ("the Agreement") between the Hospital and the union then representing the nurses[4] was amended in November 1992 in anticipation of this change and contains a section specifically dealing with on-call. This section is at the root of the dispute underlying this case. In relevant part, the section states:

> § 8.12, On-Call Pay. The Hospital reserves the right to establish and disestablish on-call in particular units when it determines such is necessary. The Hospital will determine, in its judgment, the number of nurses needed to have a reasonable allocation of on-call assignments. It will look first at qualified volunteers and then assign the least senior qualified nurses in the unit to fill the number of on-call positions. Nurses who are assigned to be on-call will be provided with long-range beepers. All Post Anesthesia Care Unit nurses (PACU), on a rotating basis, will share on-call from 12:30 a.m. to 6:30 a.m., Tuesday through Saturday.

Similar language has remained in subsequent iterations of the Agreement.

For approximately ten years after the switch from fully staffed weeknight shifts to weeknight on-call, the Hospital used the on-call system to staff the PACU unit with night nurses seven nights a week. This practice continued without incident until

Sunday and Monday.

[4]The Massachusetts Nurses Association moved to be substituted for the original defendant, a local unit of the American Federation of State, County, and Municipal Employees (AFSCME), after the nurses voted to have the MNA replace the AFSCME as their collective bargaining representative. References to "the Union" predating 2005 are to the AFSCME.

2003, when a PACU nurse who was assigned to be on call on a weekend night filed a grievance challenging the Hospital's authority to assign nurses to on-call during weekend nights. She argued that the last above-quoted sentence in § 8.12 of the Agreement, which states that weeknight on-call duty is to be shared equally among all PACU nurses, set forth the exclusive time and manner in which PACU nurses could serve on call. In other words, she contended that the sentence placed a limitation on the Hospital's authority to "establish . . . on-call" as it sees fit.

The Hospital responded that the sentence in question was not a limitation on when PACU nurses could be assigned on-call but rather a modification of how nurses would be chosen for on-call duty on weekday nights under the new arrangement. Since the first part of § 8.12 specifies that, generally speaking, nurses will be selected for on-call by volunteers and then in reverse order of seniority, the second part, the Hospital contended, simply laid out a different method for selecting nurses to serve on call during weekday nights. The Hospital's proffered reason for the different method was that weeknight on-call was a replacement for the fully staffed weeknight shifts that had been in place until 1993, and that the Hospital and the Union had agreed to distribute those shifts equally among all PACU nurses rather than assign them solely to volunteers and to the most junior nurses.

The aggrieved nurse followed the grievance procedure laid out in the Agreement and the Union and the Hospital eventually proceeded to arbitration.

## B. The Arbitration

The parties' collective bargaining agreement includes a comprehensive dispute resolution procedure. One provision spells out the function and authority — including limits thereon — of the arbitrator selected to resolve a dispute. The provision makes clear that the Agreement grants an arbitrator the authority to interfere with a decision made by the Hospital only in very limited circumstances.

> § 6.4, <u>Arbitrator's Function and Authority</u>. The function of the arbitrator is to determine the interpretation and application of the specific provisions of this Agreement to the grievance. . . . No arbitrator shall have any authority or power to reverse, set aside or modify any determination made by the Hospital pursuant to the provisions of this Agreement unless he or she finds that such determination was arbitrary or capricious, without any reasonable basis or in contravention of express language of this Agreement which is not subject to interpretation.

In accordance with these restrictions, the arbitrator in this case recognized that she had the authority to put a stop to the Hospital's practice of assigning weekend on-call only if that practice either (a) was arbitrary and capricious or (b) contravened express language in the Agreement that was not subject to interpretation; that is, unambiguous language. Accordingly, she

made explicit findings about whether the two prongs were met. She first concluded that the Hospital's decision to assign nurses to weekend on-call was not arbitrary or capricious; to the contrary, she found the decision very reasonably grounded in patient safety concerns. She went on to find, however, that the practice of giving on-call assignments for weekend nights contravened express, unambiguous language in the Agreement. She concluded that she therefore had the authority under § 6.4 to set the Hospital's decision aside.

The arbitrator's decision rested on her determination that the fifth sentence in § 8.12 had only one possible meaning. She stated,

> The fifth sentence of [§ 8.12] plainly defines a limited time period during which PACU nurses can be assigned on-call. It specifically states that the only time PACU nurses can be assigned to on-call is weekday nights. This provision is not subject to interpretation, because any proffered interpretation that would expand the instances in which PACU [nurses] can be required to go on-call would render the provision meaningless and unnecessary.

The arbitrator accordingly concluded that the Hospital had violated the Agreement by requiring PACU nurses to serve on call at times other than weekday nights. As a remedy, she ordered the Hospital to cease assigning any PACU nurses to on-call duty on weekend nights.

## C. The District Court Decision

The Hospital brought an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the arbitration award.  It argued that the arbitrator had exceeded her authority by ignoring the plain language of the Agreement and resting her award on palpably faulty reasoning.  The Hospital contended that it was simply irrational for the arbitrator to conclude that the fifth sentence of § 8.12 would be meaningless unless interpreted to prohibit weekend night on-call.  Rather, the Hospital argued, that sentence makes perfect sense as a way of changing the method by which nurses would be selected for on-call duty on weekday nights.

The district court found that the arbitrator had construed the Agreement in a way that completely transformed the meaning of § 8.12 and created a work rule never contemplated or bargained for by the parties.  It further held that the arbitrator had exceeded the limited authority given her by § 6.4 by interfering with a Hospital decision without first finding that the decision was arbitrary or capricious.  Accordingly, the court granted the Hospital's motion for summary judgment and vacated the arbitral award.  The Union now appeals.

## II. Analysis

### A. Standard of Review

We review the district court's grant of summary judgment de novo, Cytyc Corp. v. Deka Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006), applying the same standard as did the district court. The hallmark of federal court review of an arbitrator's decision is extreme deference to the opinion of the arbitrator, whose interpretation of the contract has been bargained for by the parties to the arbitration agreement. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37-38 (1987); Cytyc, 439 F.3d at 32-33. "[J]udicial review of an arbitration decision is extremely narrow and extraordinarily deferential [and] 'is among the narrowest known in the law.'" Providence Journal Co. v. Providence Newspaper Guild, 271 F.3d 16, 20 (1st Cir. 2001) (quoting Maine Centr. R.R. Co. v. Bhd. of Maintenance of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989)). If an arbitration award rests on a plausible interpretation of the underlying contract, we must uphold it. See id. at 21 (upholding arbitrator's decision because it was "a plausible, if not reasonable, interpretation of the collective bargaining agreement"); Labor Relations Div. of Constr. Indus. of Mass. v. Int'l Bhd. of Teamsters, 29 F.3d 742, 746-47 (1st Cir. 1994) (same).

Nonetheless, an arbitrator's decision is not entirely impervious to judicial oversight. In very limited circumstances,

a party may succeed in challenging an arbitrator's interpretation of an agreement. "[T]he paramount point to be remembered in labor arbitration is that the power and authority of an arbitrator is totally derived from the collective bargaining agreement and that he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract." Georgia-Pac. Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir. 1988) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). "Our task is to determine whether the arbitrator exceeded his authority by failing to apply the contract in a plausible manner." Labor Relations Div., 29 F.3d at 746.

## B. Scope of the Arbitrator's Authority

The Agreement in this case grants arbitrators only narrow authority to overrule determinations made by the Hospital, allowing an arbitrator to interfere only if "he or she finds that [a] determination was arbitrary or capricious, without any reasonable basis or in contravention of express language of this Agreement which is not subject to interpretation." The arbitrator here determined that the language in § 8.12 was not subject to interpretation and consequently found she had the authority to set aside a Hospital policy that contravened that language.[5]  It is

---

[5]The district court appeared to believe that § 6.4 sets out a conjunctive requirement, i.e., that the Hospital's decision be both arbitrary or capricious and in contravention of unambiguous

this threshold determination, rather than the arbitrator's later decision on the merits that the Agreement prohibited assigning PACU nurses to weekend night on-call duty, that we review. We do so by asking whether the arbitrator had a plausible basis for her determination. In making this assessment, we keep in mind the Supreme Court's repeated admonitions that courts may never substitute their own views of the merits of a particular case for the views of the arbitrator. See, e.g., Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 511 (2001); Misco, 484 U.S. at 36. We also take into account, in this particular case, the very narrow scope of authority granted to the arbitrator by the Agreement in the first place. Cf. Nat'l Cas. Co. v. First State Ins. Group, 430 F.3d 492, 497-98 (1st Cir. 2005) (noting that the dissatisfied party "will have great difficulty" showing prejudice from arbitral process where contract contained "broad" clause that "fully sign[ed] over to the arbitrators the power to run the dispute resolution process unrestrained by the strict bounds of law or of judicial process").

---

contractual language before the arbitrator can intervene. The arbitrator, in contrast, evidently found the word "or" to create a disjunctive requirement; i.e., an arbitrator is not empowered to modify a Hospital decision unless the decision (a) is arbitrary or capricious or without any reasonable basis, or (b) contravenes express, unambiguous language in the Agreement. The arbitrator's view is a plausible interpretation of contractual language that would admittedly have benefitted from more careful placement of commas. In any event, the arbitrator herself found that the first prong was not met, and we conclude the second prong was not met either.

In her decision, the arbitrator reasoned that the relevant language in § 8.12, the fifth sentence, is "express" because it "plainly defines a limited time period during which PACU nurses can be assigned on-call" and "specifically states that the only time PACU nurses can be assigned to on-call is weekday nights." She went on to conclude that the language was "not subject to interpretation" because any other interpretation besides the one just stated "would render the provision meaningless and unnecessary." However, the Hospital has put forth an entirely logical and rational interpretation that belies the arbitrator's insistence that only her interpretation makes sense. The Hospital's explanation is that the fifth sentence of § 8.12 describes an alternative method for assigning PACU nurses to on-call duty on weekday nights: on weekend nights, PACU nurses will continue to be chosen for on-call using the general, Hospital-wide method of first taking volunteers and then selecting the most junior nurses; but on weekday nights in the PACU unit, all PACU nurses will share on-call duty equally, since weeknight on-call is a replacement for the old, fully staffed PACU weeknight shifts.

That the Hospital's explanation seems eminently reasonable to us would be irrelevant if we were reviewing the arbitrator's decision that her interpretation of § 8.12 was the best possible interpretation. "[I]nterpretation of the collective bargaining agreement is a question for the arbitrator. It is the

-11-

arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." <u>Enter.</u> <u>Wheel & Car</u>, 363 U.S. at 599. The question before us, however, is not the plausibility of the arbitrator's view as to the meaning of § 8.12, but rather the plausibility of her assertion that § 8.12 is not subject to interpretation at all. In this context, the presence of a logical, rational alternative explanation of the meaning of § 8.12 is highly relevant, because it indicates that there is more than one reasonable way of looking at § 8.12 and, therefore, that the provision is subject to interpretation. The reasonableness of the Hospital's interpretation is bolstered by the fact that PACU nurses served on call on weekend nights as a matter of course for at least ten years preceding this dispute. <u>Cf.</u> <u>Providence Journal Co.</u>, 271 F.3d at 21 (arbitrators are allowed to use the parties' past practice "as an interpretive device or as relevant evidence").

We conclude it was not plausible for the arbitrator to find the fifth sentence of § 8.12 not subject to interpretation. She therefore had no authority under the collective bargaining agreement to overturn the Hospital's weekend on-call assignment policy on the ground that it contravened that language in § 8.12.

Accordingly, her decision cannot stand and her award must be vacated.

### III. Conclusion

It is rare for a court to disturb the result of a dispute resolution process that has been duly bargained for by the parties. "Nevertheless, acknowledging that our role is a limited one is not the equivalent of granting limitless power to the arbitrator." Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, 314 F.3d 29, 33 (1st Cir. 2002) (citing Georgia-Pac., 864 F.2d at 944). It is well established that arbitrators cannot exceed the authority given to them by the underlying contractual agreement, and that is what the arbitrator did here.

The opinion of the district court vacating the arbitrator's award is **affirmed**.