# United States Court of Appeals

## For the First Circuit

No. 06-2393

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL,
ORNAMENTAL AND REINFORCING IRON WORKERS UNION LOCAL #7,

Plaintiff, Appellant,

v.

ASSOCIATED GENERAL CONTRACTORS OF MASSACHUSETTS, INC.;
NORTHEAST ERECTORS ASSOCIATION; and BUILDING TRADES
EMPLOYERS' ASSOCIATION OF BOSTON AND EASTERN MASSACHUSETTS,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,* Senior U.S. District Judge]

Before

Boudin, Chief Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

Gabriel O. Dumont, Jr. with whom Dumont, Morris and Burke,
P.C. was on brief for appellant.
James F. Grosso with whom O'Reilly, Grosso & Gross, P.C. was
on brief for appellees.

June 7, 2007

*Of the Southern District of New York, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  Local 7--a labor union--is a party to a multi-employer collective bargaining agreement ("CBA") with various steel-erection contractors and subcontractors, some of whom are members of three employer associations.[1]  Under the terms of an agreement effective in September 2004, signatory contractors must contribute to the Iron Workers District Council of New England Pension Fund, Health and Welfare Fund, Pension Supplemental Fund and Annuity Fund.

The agreement required pay-as-you-go employer contributions (by means of prepaid stamps) and the bonding of new and delinquent employers to protect the funds against nonpayment.  In June 2005, the associations requested that Local 7 enforce the payment and bond provisions; the bonding requirements had been ignored and, the associations said, their members were bidding for jobs in a competitive market against other employers who were delinquent in making fund payments.

In response, the trustees of the funds (there are union and management trustees in each fund) adopted procedures for delinquency collection and auditing, but they declined to impose the bonding requirements set forth in the CBA.  The associations

---

[1]Local 7 is a local in the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Union. The employer associations are the Associated General Contractors of Massachusetts, Inc., the Building Trades Employers' Association of Boston and Eastern Massachusetts, and the Northeast Erectors Association.

then sought arbitration against Local 7 as specified in the CBA, which contains a broadly phrased arbitration clause.

Following a hearing, the arbitrator found the dispute to be arbitrable, ruled that the local had not been enforcing the payment or bonding requirements, and directed that the union do both--with one qualification: that bonding not be required for all new employers but only for employers, new or old, who had been "habitually delinquent in their [fund] payment[s]." The arbitrator directed the parties to meet regularly with each other and the fund trustees in order to design methods for the necessary audits.

Local 7 moved in the district court to vacate the award and the associations counterclaimed to enforce the arbitrator's decision. See 9 U.S.C. § 10 (2000); 29 U.S.C. § 185. The district court sided with the associations. Local 7 now seeks review in this court, arguing that the grievance was not arbitrable under the CBA, that the arbitrator erred on the merits and that the decision violates public policy on several different grounds. We address the issues, which are primarily legal, in this order.

Local 7 first says the dispute is not arbitrable under the CBA. The CBA contains the payment and bonding requirements already described and also provides for arbitration under the CBA as to "all questions involving the interpretation and application of any section of this Agreement." On the face of the matter, Local 7's failure to enforce payment and bonding requirements

-3-

provided for in the CBA itself looks like a violation of the CBA for which arbitration under the CBA is a proper remedy.

Local 7 counters that the agreements establishing the trust funds provide for arbitration of disagreements among the trustees and prohibit arbitration under the CBA of "any matter arising in connection with the administration of" the funds. The trust agreements also provide for the trustees to make rules and regulations "for the collection and administration of employer contributions" to the funds. Collection and bonding, says Local 7, are matters of administration under the trust agreements and not the CBA.

Ordinarily, whether a dispute falls within an arbitration agreement is a matter of law for the court. Howsam v. Dean Witter Reynolds, 537 U.S. 79, 84 (2002). The term "administration," pertinently used in the Taft-Hartley Act, has been read broadly by some courts and narrowly by others.[2] But the question before us is not one of abstractly defining a single term but of making workable sense of the CBA which provides for funding the trusts, the closely

---

[2]The Taft-Hartley Act, 29 U.S.C. § 186(c)(5) (2000), requires that such trust agreements contain a clause for arbitration of matters pertaining to the administration of such funds. For cases construing "administration," compare Mahoney v. Fisher, 277 F.2d 5, 5 (2d Cir. 1960), and Gold v. Pennachio, 757 F. Supp. 13, 16 (S.D.N.Y. 1991), with Jackson v. Smith, 927 F.2d 544, 548-49 (11th Cir.), cert. denied, 502 U.S. 909 (1991), and Ader v. Hughes, 570 F.2d 303, 307 (10th Cir. 1978). See generally Hawkins v. Bennett, 704 F.2d 1157, 1160-61 (9th Cir. 1983).

related trust agreements and the respective arbitration clauses which purport to be exclusive of one another.

The district court expressed doubt whether the trust arbitration provision had any relevance where, as here, there is no reported disagreement among the trustees. In all events, the obligations that the associations here seek to enforce for collection and bonding are explicitly set forth in the CBA; the arbitrator's decision is enforcing obligations against the union as a party to the CBA; and the powers of the trustees to manage the trust are not being curtailed or frustrated.

This brings us to Local 7's "merits" claim which is easily resolved. Our review, although de novo as to the district court, is highly deferential as to the arbitrator. Salem Hosp. v. Mass. Nurses Ass'n, 449 F.3d 234, 237-38 (1st Cir. 2006). "[A]s long as the arbitrator is even arguably construing or applying the contract," a court's view that the arbitrator has erred is not enough to overturn the arbitrator's decision. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

The union argues that even if the dispute is arbitrable under the CBA, the arbitrator erred in finding that the union was violating the bonding requirement. Although bonding requirements are explicitly set forth in the CBA, the union points to language in the CBA stating that "[d]etails of said bond are set forth" in the incorporated trust agreements. Because no such details have

been set forth, the union suggests that there are no requirements that it needed to enforce.

But this case concerns a disregard of the bonding requirement itself--which is plainly included in the CBA--and not a dispute about details. Nor, contrary to the union's claim, has the arbitrator ordered the trustees to adopt specific details; if the trustees do, these details may govern what needs to be included in the bond but, if they do not, the union and the associations will presumably work out a means of complying.

The union also says that imposing the bonding requirement on, and only on, delinquent employers does not carry out the CBA which required initial bonding, dropped the obligation for those whose records proved good, and finally provided for reinstatement of bonding for those who became delinquent after canceling the bond. Given the history of non-enforcement, the arbitrator's simplified application was within his informed discretion. Cf. Gen. Tel. Co. of Ohio v. Commc'ns Workers of Am., 648 F.2d 452, 457 (6th Cir. 1981).

Lastly, the union says that enforcement of the arbitrator's decision would violate public policy in several respects. The first and second of the public policy arguments--and possibly the third--were not presented to the arbitrator and have arguably been waived. Although the union says that public policy issues are for the court and not the arbitrator, issues should

normally be presented to an arbitrator even though a court may have the last word.[3] In any event, the public policy arguments have no support in the present record.

First, the union says that the decision violates the antitrust laws because the associations are suppressing competition from new and smaller companies who will be burdened by the bonding requirement. Post-arbitration affidavits from union officials conjecture that this was the purpose of the associations in pursuing the grievance. In fact, the CBA imposes contribution requirements on all employers who choose to sign, and the bonding requirement, as implemented by the arbitrator, applies to all repeat delinquents, whether they are new or established employers.

Collective bargaining agreements are in substantial measure shielded from antitrust attack, see Brown v. Pro Football, Inc., 518 U.S. 231, 235-37 (1996), but with limited exceptions where the agreements are misused to suppress competition. See United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965). This case provides no occasion to explore the subtleties of

---

[3]Some courts have found public policy claims not raised before an arbitrator to have been waived; one circuit disagrees. Compare District 17, United Mine Workers of Am. v. Island Creek Coal Co., 179 F.3d 133, 140 (4th Cir. 1999), and Chem. Overseas Holdings, Inc. v. Republica Oriental del Uru., 371 F. Supp. 2d 400, 401 (S.D.N.Y. 2005), aff'd, No. 05-4068-CV, 2006 WL 1049081 (2d Cir. Apr. 14, 2006), with Gulf Coast Indus. Workers Union v. Exxon Co., 991 F.2d 244, 248 n.5 (5th Cir.), cert. denied, 510 U.S. 965 (1993). The matter may turn on the nature of the public policy and whether it makes sense for the arbitrator to consider the objection in the first instance.

pertinent doctrine. Nothing in the union's post-arbitration affidavits, even assuming they are properly considered, comes close to demonstrating that enforcement of the CBA obligations will significantly impair competition in any relevant market.

The union's next public policy claim is that the arbitrator's decision will compel it to file grievances against delinquent employers even where the union concludes that this would not serve the interests of its members. The union's prerogative has generally been invoked where the union finds no merit to a union member's proposed grievance. E.g., Emmanuel v. Int'l Bhd. of Teamsters, 426 F.3d 416, 418-19 (1st Cir. 2005), cert. denied, 126 S. Ct. 1659 (2006). This case is not of that character; presumptively, enforcement of contribution requirements serves the union membership as a whole.

In any event, the arbitrator ordered that Local 7 enforce the prepayment and bonding requirements of the contract and said nothing about method. If the union thought that enforcement obligations might impair its prerogatives in grievance matters, it should have explained this to the arbitrator so he could assess the matter and, if necessary, tailor his remedies. If the argument had any merit--which is far from clear--this kind of public policy argument had to be developed before the arbitrator.

Finally, Local 7 says that the arbitrator's decision told the union and associations to meet with the trustees and that this

-8-

directive improperly interferes with the trustees' independent functioning.  The order is directed at the parties to the arbitration (the union and the associations), not the trustees, who are not <u>required</u> to do anything.  The order does not threaten the trustees' independence.

We have considered several other arguments made by Local 7, including one raised for the first time in the reply brief, but consider that no further discussion is necessary.  The judgment is <u>affirmed</u>.